*In re* FEDERAL PREEMPTION OF PROVISIONS OF THE MOTOR
CARRIER ACT

Docket Nos. 182950, 186569, 186726. Submitted September 16, 1996, at
    Lansing. Decided April 25, 1997, at 9:35 A M. Leave to appeal sought.
    The Public Service Commission, on its own initiative, commenced a
    proceeding to consider the preemptive effect of the Federal Avia-
    tion Administration Authorization Act of 1994 (FAAAA), PL 103-305,
    on Michigan's Motor Carrier Act, MCL 475.1 *et seq.*; MSA 22.531 *et
    seq.*, and the associated regulations promulgated pursuant to that
    act. The PSC's stated intention was to provide guidance to motor
    carriers until the Legislature amended the Motor Carrier Act to
    conform with the federal preemptive intent of § 601 of the FAAAA.
    The PSC issued two opinions and orders in which it concluded that
    § 601 preempts only regulatory provisions concerning price, routes,
    and service, but that it left substantial residual regulatory authority
    in the PSC with respect to issues such as safety, as well as the
    authority to continue to certify intrastate motor carriers and to
    assess statutory fees. In Docket No. 182950, Central Transport, Inc.,
    and Universal Am-Can, Ltd., appealed that portion of the PSC's deci-
    sion that held that the FAAAA did not entirely preempt state regula-
    tion of motor carriers under the Motor Carrier Act and that various
    statutory fees were not preempted. In Docket No. 186569, Michigan
    Intra-State Motor Tariff Bureau, Inc., and National Motor Freight
    Traffic Association, Inc., appealed that portion of the PSC's decision
    that held that § 601 of the FAAAA preempts the Michigan regulatory
    requirements concerning collectively established joint-line rates
    and freight classifications. In Docket No. 186726, Michigan Team-
    sters Joint Council No. 43 appealed that portion of the PSC's deci-
    sion that held that the leasing provisions of MCL 479.10a(6); MSA
    22.575(1)(6) were preempted by § 601 of the FAAAA. The appeals
    were consolidated.

    The Court of Appeals *held*:

    1. The PSC's decision that the FAAAA preempted certain provisions
of the Motor Carrier Act and its resulting decision not to enforce
those statutory requirements that it found to be preempted by the
federal act constituted the fixing of rates, fares, charges, and classi-
fications or an order fixing regulations, practices, or services
within the meaning of MCL 462.26(1); MSA 22.45(1). Accordingly,

the PSC's order implementing its decision by refraining from enforcing those provisions of the Motor Carrier Act that it found to be preempted by the FAAAA was properly subject to a direct appeal to the Court of Appeals under these circumstances, and such an appeal is consistent with the efficient appellate process that was intended by the Legislature.

2. The PSC, in implementing its review of the extent of the federal preemption intended by § 601 of the FAAAA, did not undertake to rewrite the Motor Carrier Act, but rather exercised its statutory power to supervise and regulate motor common carriers of property and to do those things necessary to carry out and enforce the Motor Carrier Act to the extent permitted by the federal limitations on the state's right to regulate such activities.

3. It is clear from the language of § 601 that Congress intended to preempt from state regulation only certain matters relating to economic regulation of the trucking industry. Congress did not intend to preempt all state regulation of the trucking industry, § 601 expressly excepting from its preemptive effect state regulation of matters relating to safety, the size and weight of vehicles, insurance requirements, and the transportation of household goods. Accordingly, the PSC did not err in holding that § 601 did not preempt from state regulation the entire field of trucking regulation or in holding that certain portions of the Motor Carrier Act remained in force.

4. The PSC properly held that the provisions of the Motor Carrier Act relating to the assessment of certain statutory fees was not preempted by § 601 of the FAAAA. Because the PSC retains significant regulatory obligations with respect to motor carrier operations, and because there is nothing to suggest that the statutory fees at issue were intended to relate only to those regulatory activities that the PSC found to be preempted by § 601, there was no showing that § 601 had the effect of preempting the continued assessment by the PSC of the statutory fees set forth in the Motor Carrier Act.

5. The question whether the PSC's decision concerning the preemptive effect of § 601 of the FAAAA had the effect of denying equal protection because of a differing treatment of "for-hire motor carriers" and "other commercial motor vehicle operators" is not properly before the Court of Appeals in the context of these appeals.

6. The clear and unambiguous language of subsection h(3) of § 601 of the FAAAA, PL 103-305, § 601(h)(3), is that state regulations relating to antitrust immunity for collective rate making of joint-line rates are exempted from the preemptive effect of § 601 where compliance with a state regulatory scheme is no more burdensome than compliance with the federal regulatory scheme and a carrier had requested such regulation. Although the Michigan statutory and

regulatory scheme relating to collective rate making of joint-line rates differed from the federal regulatory scheme in effect at the time of the PSC's decisions with respect to certain reporting requirements, the PSC's finding that compliance with Michigan's reporting scheme was more burdensome than compliance with the federal reporting scheme is not supported by competent, material, and substantial evidence. Accordingly, the PSC erred in holding that the Michigan statutes and regulations relating to collective rate making of joint-line rates were preempted by § 601 of the FAAAA.

7. The PSC determined that the leasing provision of MCL 479.10a(6); MSA 22.575(1)(6), which requires that a truck that is being operated under a lease or contract be operated by a person who is an employee of the holder of the lease or contract, is preempted by § 601 of the FAAAA. There was evidence on the record supporting the PSC's finding that the primary purpose of the leasing provision of subsection 10a(6) related to labor organizing rather than to safety concerns and that the enforcement of that subsection had a significant economic effect, with any safety-related aspect of the subsection being secondary at best. Although the PSC did not specifically hold that MCL 479.10a(6); MSA 22.575(1)(6) constituted economic regulation, the PSC's action in holding that § 601 preempted the operation of that subsection implicitly demonstrates that the PSC found that subsection to be for the purpose of economic regulation.

Affirmed in part, vacated in part, and remanded.

JANSEN, J., dissenting in part, stated that the decision of the PSC that the leasing provision of MCL 479.10a(6); MSA 22.575(1)(6) is preempted should be reversed because that provision is clearly related to safety and insurance concerns, which are not subject to preemption, rather that to economic concerns, which are subject to preemption.

1. APPEAL — PUBLIC SERVICE COMMISSION — FEDERAL PREEMPTION.

A decision by the Public Service Commission to refrain from enforcing some of the provisions of the Motor Carrier Act and some of the regulations promulgated pursuant to that act on the basis of federal preemption constitutes the fixing of rates or regulations within the meaning of the statute that provides an appeal as of right in the Court of Appeals from an order of the Public Service Commission fixing any rates or regulations (MCL 462.26[1]; MSA 22.45[1]).

2. CARRIERS — MOTOR CARRIERS — FEDERAL PREEMPTION — INTENT OF CONGRESS.

Congress in enacting the Federal Aviation Administration Authorization Act of 1994 did not intend to preempt all state regulation of the trucking industry, but rather expressly excepted from the preemptive effect of that act state regulation of matters relating to safety, the size and weight of vehicles, insurance requirements, and the transportation of household goods (PL 103-305, § 601).

3. CARRIERS — COLLECTIVE RATE MAKING — JOINT-LINE RATES — FEDERAL PREEMPTION.

The Federal Aviation Administration Authorization Act of 1994 does not preempt state regulation of the activities of motor carriers insofar as they relate to antitrust immunity of collective rate making of joint-line rates where compliance with a state regulatory scheme is no more burdensome than compliance with the corresponding federal regulatory scheme and a carrier has requested such regulation (PL 103-305, § 601[h][3][A][iv], [h][3][B][i]).

4. CARRIERS — COLLECTIVE RATE MAKING — JOINT-LINE RATES — FEDERAL PREEMPTION.

The Michigan regulatory scheme for providing motor carriers with antitrust protection with respect to collective rate making of joint-line rates is no more burdensome than the corresponding federal regulatory scheme; accordingly, Michigan is not preempted from providing motor carriers with antitrust protection by regulating collective rate making of joint-line rates where a carrier has requested such regulation (PL 103-305, § 601[h][3]).

5. CARRIERS — MOTOR CARRIER ACT — LEASED VEHICLES — ECONOMIC REGULATION — SAFETY — FEDERAL PREEMPTION.

The provision in the Motor Carrier Act that requires the person who operates a leased motor carrier to be an employee of the holder of the lease to the vehicle was intended to make it easier for labor unions to organize the vehicle operators and, thus, was primarily intended as economic regulation rather than safety regulation; the leased vehicle provision, being an economic regulation that affects routes, services, and probably prices, is subject to federal preemption under § 601(h) of the Federal Aviation Administration Authorization Act of 1994 (PL 103-305, § 601[h]; MCL 479.10a[6]; MSA 22.575[1][6]).

*Foster, Swift, Collings & Smith, P.C.* (by *John W. Ester, Robert E. McFarland,* and *Peter R. Albertins*), for Central Transport, Inc., and Universal Am-Can, Ltd.

*Foster, Swift, Collings & Smith, P.C.* (by *Robert E. McFarland*), for Michigan Intra-State Motor Tariff. Bureau, Inc., and National Motor Freight Traffic Association, Inc.

*Bagileo, Silverberg & Goldman* (by *John R. Bagileo* and *Claire Shapiro*) pro hac vice, for National Motor Freight Traffic Association, Inc.

*Rudell & O'Neill* (by *Kevin J. O'Neill*), for Michigan Teamsters Joint Counsel No. 43.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey, Henry J. Boynton,* and *Judith I. Blinn,* Assistant Attorneys General, for the Public Service Commission.

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *William D. Parsley*), for Morgan Drive Away, Inc.

*Sullivan and Leavitt, P.C.* (by *Martin J. Leavitt*), for Aggregate Carriers Association of Michigan, Inc., and Cement Carriers Association.

*Butzel Long* (by *William R. Ralls, Leland R. Rosier,* and *Wendel V. Hall*), for United Parcel Service.

Before: MACKENZIE, P.J., and JANSEN and T. R. THOMAS*, JJ.

MACKENZIE, P.J. The Michigan Public Service Commission (PSC) issued opinions and orders on January 11, 1995, and May 18, 1995, pertaining to the effect of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), PL 103-305, on Michigan's Motor Carrier Act, 1933 PA 254, as amended, MCL 475.1 *et seq.*;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 22.531 *et seq.* This Court consolidated the appeals of those decisions by several interested parties. Addressing only those aspects of the PSC's decisions that are directly challenged by appellants, we affirm in part, vacate in part, and remand.

The FAAAA was signed by President Clinton on August 23, 1994, and took effect on January 1, 1995. Section 601(h) of the FAAAA, PL 103-305, § 601, entitled "Preemption of Intrastate Transportation of Property," codified at the time of enactment as 49 USC 11501(h), but subsequently recodified as amended as 49 USC 14501(c), provides:

> Preemption of State economic regulation of motor carriers.
>
> (1) General rule. Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier with respect to the transportation of property.
>
> (2) Matters not covered. Paragraph (1)
>
> (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; and
>
> (B) does not apply to the transportation of household goods.
>
> (3) State standard transportation practices.
>
> (A) Continuation. Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or polit-

ical authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to

(i) uniform cargo liability rules,

(ii) uniform bills of lading or receipts for property being transported,

(iii) uniform cargo credit rules, or

(iv) antitrust immunity for joint line rates or routes, classifications and mileage guides, if such law, regulation, or provision meets the requirements of subparagraph (B).

(B) Requirements. A law, regulation, or provision of a State, political subdivision, or political authority meets the requirements of this subparagraph if

(i) the law, regulation, or provision covers the same subject matter as, and compliance with such law, regulation, or provision is no more burdensome than compliance with, a provision of this subtitle or a regulation issued by the Interstate Commerce Commission or the Secretary of Transportation under this subtitle; and

(ii) the law, regulation, or provision only applies to a carrier upon request of such carrier.

(C) Election. Notwithstanding any other provision of law, a carrier affiliated with a direct air carrier through common controlling ownership may elect to be subject to a law, regulation, or provision of a State, political subdivision, or political authority under this paragraph.

It has long been the PSC's obligation to supervise and regulate the transportation of property by motor vehicle for hire upon the public highways of Michigan. MCL 475.2; MSA 22.532. Michigan's Motor Carrier Act applies to entities engaged in interstate commerce only to the extent it is consistent with federal law. MCL 476.12; MSA 22.545.

On September 8, 1994, the PSC, acting on its own initiative, commenced the instant proceeding, No. T-1273, to consider the preemptive effect of the federal legislation and to give the PSC an opportunity to

express its view regarding which portions of the Motor Carrier Act and the associated regulations were preempted. The PSC's stated intention was to provide guidance to motor carriers until the Legislature amends the Motor Carrier Act to conform with the federal preemption. The PSC did not attempt to address the constitutionality of § 601, but rather assumed it was constitutional.

The PSC concluded that § 601 preempts only regulatory provisions concerning price, routes, and service—the essence of economic regulation. The PSC found it had substantial residual regulatory authority, including regulatory authority over matters such as safety. The PSC further concluded that it should continue a certification process (albeit, a "streamlined" certification process) for intrastate motor carriers and that it could and should continue to assess statutorily mandated fees. The PSC appended to its decisions copies of the Motor Carrier Act and the related rules with lines drawn through the large portions of the act and the rules that it concluded had been preempted. Since issuing its decisions, the PSC has ceased enforcing those provisions of the Motor Carrier Act that it concluded had been preempted.

Under MCL 462.26(8); MSA 22.45(8), it is an appellant's burden to show by clear and satisfactory evidence that the order of the PSC complained of is unlawful or unreasonable. *Michigan Intra-State Motor Tariff Bureau, Inc v Public Service Comm*, 200 Mich App 381, 387; 504 NW2d 677 (1993). This Court gives due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC, particularly in legislative matters such as setting rates. *Id.*, p 388. However, judicial deference is

not as great with respect to administrative interpretations of recent legislation as it is with respect to administrative interpretations of longstanding legislation. *Telephone Ass'n of Michigan v Public Service Comm*, 210 Mich App 662, 670; 534 NW2d 223 (1995); *In re Filing Requirements for Telecommunications Complaints*, 210 Mich App 681, 692-693; 534 NW2d 234 (1995).

### JURISDICTION

Numerous acts under which the PSC has been granted regulatory authority incorporate the appeal provisions in MCL 462.26; MSA 22.45. See, e.g., MCL 460.4; MSA 22.13(4), MCL 484.114; MSA 22.1454, repealed by 1991 PA 179, MCL 483.110; MSA 22.1320, MCL 460.59; MSA 22.9, MCL 460.557(6); MSA 22.157(6), MCL 460.301(6); MSA 22.101(6), and MCL 460.506; MSA 22.146. Also see the provisions listed in *Sullivan v Public Service Comm*, 93 Mich App 391, 396-397; 287 NW2d 188 (1979). Appeals from PSC decisions regarding the Motor Carrier Act are no exception. MCL 479.20; MSA 22.585 provides that "[a]ny order or decree of the commission shall be subject to review in the manner provided for in [MCL 462.26; MSA 22.45]."

Under MCL 462.26(1); MSA 22.45(1), an appeal as of right to this Court may be filed by any common carrier or other party in interest who is "dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services . . . ."

The question arises whether the PSC's orders, which provide a "framework" and "guidance" to motor carri-

ers, constitutes the "fixing" of rates, fares, practices, and services that forms the basis for this Court's jurisdiction under MCL 462.26(1); MSA 22.45(1). "Fix" in MCL 462.26(1); MSA 22.45(1) should be construed in the sense the word was intended by the Legislature to be used in the statute. *In re Certified Question*, 433 Mich 710, 723; 449 NW2d 660 (1989); *Aikens v Dep't of Conservation*, 387 Mich 495, 499; 198 NW2d 304 (1972).

"Fixed" has numerous meanings. The first definition in Black's Law Dictionary, 4th ed, is "adjust or regulate." The PSC's decisions at issue adjust or regulate many practices of motor carriers in this state by, in effect, declining to enforce numerous provisions in the Motor Carrier Act. For example, the PSC found preempted the requirement that a shipper applying for a certificate of authority present evidence that the service it proposes will serve a required public purpose and the requirement that the proposed service will not be excess service. MCL 476.5(1)(c), (2)(b); MSA 22.538(1)(c), (2)(b). Had the PSC enforced these requirements, rather than eliminating them, there would be no question that the PSC "fixed" a regulation.

Other examples abound. Carriers are no longer required to file schedules of rates or to avoid predatory pricing. MCL 476.6; MSA 22.539. Statutory restrictions with respect to unreasonable rates and standards for reasonable rates are no longer enforced. MCL 476.7; MSA 22.540, MCL 476.7a; MSA 22.540(1). The penalty provision for unlawful discrimination is no longer enforced. MCL 476.8; MSA 22.541. The PSC no longer exercises its power to determine reasonable and sufficient rates, fares, charges, and classifications under MCL 476.10; MSA 22.543.

The sweeping change in the PSC's enforcement practices constitutes the "fixing" of rates, charges, regulations, and practices contemplated in MCL 462.26(1); MSA 22.45(1). Such widespread relaxation of regulation of the trucking industry should not escape appellate scrutiny on the basis of a narrow construction of the word "fix" in MCL 462.26(1); MSA 22.45(1). The effect of the PSC's decisions has been immediate and is more than merely advisory. For example, freight classifications filed by appellant National Motor Freight Traffic Association, Inc., on behalf of more than forty carriers were rejected by the PSC on the basis of its May 18, 1995, decision.

The federal preemption legislation and the PSC's decisions substantially changed the regulatory framework for the trucking industry in Michigan. The result is similar to the situation in the telecommunication industry. This Court reviewed a PSC decision that provided guidance regarding changes in telecommunications regulation in *In re Procedure for Filing Telecommunications Tariffs*, 210 Mich App 533; 534 NW2d 194 (1995).

There is no better forum than this Court in which to appeal the decisions at issue here. While an appeal to the circuit court under MCL 600.631; MSA 27A.631 might be available, starting the appellate process in the circuit court would simply add an additional level to the appellate process in an appeal in which the record is complete. We think our Legislature had a more efficient appellate process in mind when it consolidated the method of appeal for numerous regulatory acts in the procedure set forth in MCL 462.26; MSA 22.45. Indeed, we recognized in *Sullivan, supra,*

p 396, that the Legislature intended nearly all PSC matters to be appealed under § 26.

NO. 182950

Among the conclusions in the PSC's January 11, 1995, decision were the determinations that § 601 of the FAAAA did not entirely preempt state regulation under Michigan's Motor Carrier Act and that various fees mandated in MCL 477.12-478.8; MSA 22.559-22.565(2) were not preempted. Appellants Central Transport, Inc., and Universal Am-Can, Ltd. dispute these determinations and further argue that if the PSC is correct, then an equal protection violation results because an unjustified distinction is made between "for-hire motor carriers" and "all other commercial motor vehicle operators." In a preliminary argument, appellants contend that the PSC lacked authority to issue the decisions appealed.

The PSC is a creature of the Legislature, and its authority must be found in statutory enactments. *Union Carbide Corp v Public Service Comm*, 431 Mich 135, 146; 428 NW2d 322 (1988); *In re Quality of Service Standards for Regulated Telecommunications Services*, 204 Mich App 607, 611; 516 NW2d 142 (1994). The PSC does not have authority to determine the constitutionality of statutes. *Dation v Ford Motor Co*, 314 Mich 152, 159-160; 22 NW2d 252 (1946); *Universal Am-Can, Ltd v Attorney General*, 197 Mich App 34, 37; 494 NW2d 787 (1992). Nowhere is the PSC granted the authority to rewrite statutes, which is what appellants Central Transport and Universal Am-Can claim the PSC did in this case.

The PSC was clear in avoiding constitutional issues, and it recognized that amendments of the Motor Car-

rier Act were the province of the Legislature. The PSC did not "rewrite" the Motor Carrier Act. Rather, the PSC issued considered decisions that indicated how its regulation of the trucking industry in Michigan was affected by federal legislation preempting at least some aspects of state regulation. This action by the PSC was within its power to supervise and regulate motor common carriers of property and to do all things necessary to carry out and enforce the Motor Carrier Act. MCL 476.10; MSA 22.543. The action by the PSC was also appropriate under MCL 475.2; MSA 22.532, which grants the PSC the power and authority to supervise and regulate the transportation of property by motor vehicle for hire. Regardless of the correctness of its decisions, rendering those decisions provided a uniform framework under which the trucking industry could carry out its activities in Michigan. The PSC exercised its inherent power necessary to carry out its duties. *In re Telecommunications Tariffs, supra,* p 540; *In re Quality of Service Standards, supra,* p 613.

Appellants Central Transport and Universal Am-Can fashion their argument that § 601 preempted the entire field of trucking regulation through the use of United States Supreme Court decisions interpreting the Airline Deregulation Act of 1978, PL 95-504, 49 USC 41713. Those decisions give a broad construction to the phrase "relating to rates, routes, or services." See *Morales v Trans World Airlines, Inc,* 504 US 374; 112 S Ct 2031; 119 L Ed 2d 157 (1992); *American Airlines, Inc v Wolens,* 513 US 219; 115 S Ct 817; 130 L Ed 2d 715 (1995). The preemptive language involved in those cases is quite similar to the preemptive language in § 601. In both instances states are prohibited

from enacting or enforcing legislation related to prices, routes, or service.

Congressional intent is the cornerstone of preemption analysis. *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997). Regardless of the similarities between the Airline Deregulation Act of 1978 and § 601 of the FAAAA, it is clear and unambiguous from the language of § 601 that the congressional intent was not to preempt all state regulation of the trucking industry. Section 601 expressly excepts from its preemptive effect significant aspects of regulation, including safety regulation, regulation of size and weight of vehicles, regulation of insurance requirements, and regulation of the transportation of household goods. If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent. *Tryc v Michigan Veteran's Facility*, 451 Mich 129; 545 NW2d 642 (1996). Furthermore, the House Conference Report indicates that "economic regulation" is intended to be preempted and that states retain their authority to regulate various aspects of the transportation industry. See H R Conf Rep No 677, 103d Cong, 2d Sess, pp 84-85. The title given to § 601(h) is "Preemption of State *Economic* Regulation of Motor Carriers." (Emphasis added.) The argument that Congress intended to preempt the entire field of regulation of motor carriers fails in the face of the language of the legislation and its history. The PSC's determination that § 601 was intended to preempt only economic regulation is consistent with the language and history of the legislation.

Appellants Central Transport and Universal Am-Can next argue that the "fee collection provisions" of the

Motor Carrier Act were preempted, even if the entire act was not preempted. The only "fee provisions" specifically referred to by these appellants are MCL 478.1; MSA 22.560 (a $100 application fee and a $50 renewal fee), MCL 478.1a; MSA 22.560(1) (a $50 fee for filing protests), and MCL 478.2; MSA 22.561 (covering several fees ranging in amount from $10 to $100, including a $100 annual fee assessed against and collected from each motor carrier for administration of the act). These appellants contend that because the primary focus of the PSC in the past had been economic regulation, federal preemption of economic regulation means that the fees assessed for that regulation are also preempted.

Section 601 did not preempt the entire Motor Carrier Act. Section 601 of the FAAAA does not in its words indicate an intent to preempt fee provisions such as those challenged by these appellants. The legislative history reflects a contrary intent. The House Conference Report states that nothing in the legislation is intended to change the application of state tax laws to motor carriers. H R Conf Rep No 677, *supra*, p 85.

The PSC still has significant regulatory obligations. For example, the PSC must supervise and regulate the safety of motor carrier operations. MCL 479.41; MSA 22.587(1). There is still a certification process. It follows that the fees for obtaining a certificate of authority, MCL 478.1; MSA 22.560, for protesting an application for a certificate, MCL 478.1a; MSA 22.560(1), and for administering the act, MCL 478.2(1); MSA 22.561(1), are unaffected by the preemptive effect of § 601. In fact, because the PSC is not using its resources to enforce preempted portions of

the Motor Carrier Act, the fees collected by the PSC are not related to the preempted provisions and rules. Indeed, appellants Central Transport and Universal Am-Can have not shown that the cost of the PSC's operations has ever been totally funded by the fees it collects, and they have not provided any reason to believe that the fees collected were or can be used only for what is now preempted economic regulation.

Appellants Central Transport and Universal Am-Can further argue that the PSC's decision resulted in an equal protection violation with respect to "for-hire motor carriers" because these carriers are subject to safety regulation under the Motor Carrier Act while "other commercial motor vehicles operators" are not subject to safety regulation under the act; however, they do not precisely define who is included in "all other commercial motor vehicles operators." The PSC limited its decision to motor carriers within its jurisdiction, including "motor common carriers of property" and "motor contract carriers of property." MCL 475.1(f), (h); MSA 22.531(f), (h). More importantly for our purposes, the PSC did not decide the equal protection argument raised before it. The PSC acted lawfully and reasonably in doing so. The PSC does not possess the power to determine the constitutionality of statutes, and direct challenges to the constitutionality of statutes belong in a different forum. *Universal Am-Can Ltd, supra,* pp 37-38. We decline to further review the equal protection argument, given the posture of this appeal. There is no determination by the PSC for this Court to review. The argument is not developed sufficiently for this Court to consider it in the first instance.

After considering testimony regarding the subject, in its May 18, 1995, decision the PSC concluded that § 601 preempted Michigan regulatory requirements concerning collectively established joint-line rates and freight classifications. Provisions regarding this aspect of the PSC's regulatory authority are found at least in MCL 475.2(n); MSA 22.532(n), MCL 476.7b; MSA 22.540(2), and MCL 479.6b; MSA 22.571(2). These provisions form the basis for anti-trust immunity for entities such as appellants Michigan Intra-State Motor Tariff Bureau, Inc., and National Motor Freight Traffic Association, Inc., that are involved in collectively setting rates and freight classifications. *Southern Motor Carriers Rate Conference, Inc v United States*, 471 US 48; 105 S Ct 1721; 85 L Ed 2d 36 (1985).

Our Legislature has clearly indicated its approval of collective rate-making activities in declaring it a policy of this state to promote such activities. MCL 475.2(n); MSA 22.532(n), as amended by 1993 PA 352. The framework for regulating such activities is provided in MCL 479.6b; MSA 22.571(2), as amended by 1993 PA 352. Furthermore, the Legislature expressly, deprived the PSC of authority to eliminate collective rate making through the exercise of its authority under MCL 479.6b; MSA 22.571(2). MCL 479.6b(1); MSA 22.71(2)(1). Thus, the PSC's decision regarding collective rate-making activities contravened clearly stated transportation policy of this state.

When Congress passed § 601 it did not intend a sweeping preemption of state regulation relating to collective rate-making activities. This is evident from the existence of a specific exception for "antitrust

immunity for joint line rates or routes, classifications and mileage guides . . . ." Section 601(h)(3)(A)(iv). The House Conference Report states that subsection h(3) permits continued state regulation over the four enumerated "standard transportation practices" and that the purpose of subsection h(3) is to permit carriers, on an optional basis, to be subject to state regulation in the four areas specified in the subsection, including the antitrust immunity for joint rate-making activities. H R Conf Rep No 677, *supra*, pp 85-86. Consequently, joint rate-making activities are not preempted, provided the requirements of § 601 are satisfied.

In order to avoid preemption of regulation of collective rate-making activities, § 601(h)(3)(B)(i) requires state law to be "no more burdensome than compliance with" federal law regarding the regulated activity and that a carrier request such regulation. Appellants did request such regulation.

The question becomes whether Michigan's regulation is more burdensome than the federal regulation. Federal regulation of collective rate-making activities, as found in 49 USC 10701, 10706, 10761, and 10762 before the general amendment and recodification of the title by PL 104-88, was quite similar to the equivalent Michigan regulation found in MCL 476.7; MSA 22.540, MCL 479.6b; MSA 22.571(2), and MCL 476.6; MSA 22.539. This is not surprising, because much of the Michigan statutory scheme was added by 1982 PA 399 shortly after the federal law changed. However, the PSC found that in three respects Michigan's regulatory scheme was more burdensome than that imposed by federal authority.

The psc found Michigan's requirements in MCL 479.6b(6), (7); MSA 22.571(2)(6), (7), and rules implementing those provisions, to be more burdensome than federal requirements with regard to posting notice of meetings, maintaining minutes of activities, filing copies of bylaws and other organizational documents, and submitting a schedule of dues and charges. But rules implementing 49 USC 10706 before its amendment by PL 104-88 contain essentially the same requirements as the Michigan statutes and rules. 49 CFR 1331.2, 1331.3, and 1331.5. The psc also did not find a federal requirement similar to the notice and hearing requirement in MCL 479.6b(11); MSA 22.571(2)(11). But such a federal requirement was evident from 49 CFR 1331.3(b), requiring a published notice in the Federal Register that includes an indication of how a hearing may be obtained. Thus, Michigan's requirements were not more burdensome than the federal requirements with respect to these two points relied upon by the psc.

The third Michigan requirement that the psc found more burdensome was the requirement in MCL 479.6b(4); MSA 22.571(2)(4) that each motor carrier participating in a collective agreement provide the name, address, and other information regarding every entity having an interest of at least $100 in the motor carrier. The comparable federal statute in force at the time the psc made its decisions required carriers to list every entity having an interest valued at $1 million or more. 49 USC 10706(b)(3)(A) before its amendment by PL 104-88. While there was a difference between the Michigan and federal scheme regarding this point, this does not mean that compliance with the Michigan regulatory scheme was more burden-

some than complying with the federal scheme. Indeed, the three witnesses who testified, including Thomas Lonergan, director of the PSC's Motor Carrier Division, recognized the difference but thought that the PSC's regulation of collective rate making was no more burdensome than the federal regulation.

The fact that Michigan has a much lower cutoff point for reporting financial interest in motor carriers does not mean that reporting will be any more burdensome. There is no necessary connection between the size of financial interests and the number of those interests. A carrier may have more parties with interest exceeding $1 million than parties with interests between $100 and $1 million. The burden of reporting would seem to be essentially the same in all cases, because motor carriers can be expected to know who has a financial stake in them. The PSC's finding that compliance with Michigan regulations concerning the providing of information about entities with a financial interest in a motor carrier was more burdensome than compliance with comparable federal requirements was not supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; *Michigan Intra-State Motor Tariff Bureau, supra,* p 388. The PSC's conclusion that Michigan statutes and rules pertaining to collective rate making and collectively established freight classifications are preempted by § 601 is unlawful and unreasonable. MCL 462.26(8); MSA 22.45(8).

NO. 186726

The PSC considered testimony whether the "leasing" provisions in MCL 479.10a; MSA 22.575(1) were preempted by § 601. After considering the testimony and

arguments of numerous parties and witnesses, the PSC concluded in its May 18, 1995, decision that only some parts of MCL 479.10a; MSA 22.575(1) were preempted, including MCL 479.10a(6); MSA 22.575(1)(6), which provides:

> The lease, contract, or arrangement shall provide that the vehicle, at all times, while being operated under the lease, contract, or arrangement, shall be operated only by persons who are employees of the holder who stand in relation to the holder as employee to employer.

Appellant Michigan Teamsters Joint Council No. 43 contends that MCL 479.10a(6); MSA 22.575(1)(6) is not preempted by § 601 because subsection 10a(6) is related to conditions of safety, insurance, and labor concerns and not to economic regulation of price, route, or service.

While it can be argued that subsection 10a(6) affects safety concerns, the PSC did not find that the purpose of subsection 10a(6) was safety-related. Rather, the PSC found that the subsection was added by the Legislature in 1959 in order to make it easier for drivers to be organized by labor interests. This finding was supported by the testimony of witnesses, and therefore the PSC's finding was adequately supported by the record. Const 1963, art 6, § 28. The PSC also reasoned that the requirement in subsection 10a(6) that leased vehicles be operated by employees constituted a barrier to entry for many interstate motor carriers who relied upon independent contractors for drivers. The testimony of several witnesses supported these findings by the PSC. The PSC will not lose its authority to regulate safety if subsection 10a(6) is preempted. The PSC recognized that preemp-

tion of subsection 10a(6) will not increase the risk of uninsured vehicles in intrastate traffic, because the Motor Carrier Act otherwise contains insurance requirements, such as in MCL 476.5; MSA 22.538 and MCL 479.9; MSA 22.574.

From the PSC's findings it follows that subsection 10a(6) has a significant economic effect and that its safety-related aspect is secondary at best. The PSC's finding that subsection 10a(6) is preempted as a provision relating to price, route, or service is reasonable. The testimony relied upon by the PSC supports the conclusion that subsection 10a(6) is "related to" the costs and ability of many motor carriers to provide their services in Michigan. For example, carriers operating in interstate commerce and using independent contractors as drivers have to make special arrangements to operate intrastate traffic in Michigan. A carrier handling traffic from a point outside Michigan to a point inside Michigan could not use the same vehicle (or at least not the same independent contractor as a driver) to transport property wholly within Michigan as part of a return trip. Thus it is clear that subsection 10a(6) affects routes and services and most probably affects prices.

Although the PSC did not expressly state in its decision that subsection 10a(6) constituted "economic regulation," that the PSC reached this conclusion is evident from its opinion. After concluding that MCL 479.10a; MSA 22.575(1) was not entirely economic regulation, the PSC went on to decide that subsection 10a(6) on an individual basis was preempted. Consequently, the PSC reasoned that subsection 10a(6) does constitute economic regulation. The PSC's conclusion in this regard was supported by the evidence and was

not unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8).

In Nos. 182950 and 186726, the PSC's decisions are affirmed. In No. 186569, the PSC's decisions are vacated to the extent they determine that collective rate making and classification activities are preempted by § 601 of the Federal Aviation Administration Authorization Act of 1994. This matter is remanded to the PSC for further consideration consistent with this opinion.

Affirmed in part, vacated in part, and remanded. We retain no further jurisdiction. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.

T. R. THOMAS, J., concurred.

JANSEN, J. *(concurring in part and dissenting in part).* I concur with the majority that this Court has jurisdiction to decide these appeals. I also concur with the majority in Docket No. 182950 that the Public Service Commission (PSC) correctly determined that various fees mandated under MCL 477.12, 478.1-478.8; MSA 22.559-22.565(2) are not preempted by § 601 of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), PL 103-305. I further concur with the majority in Docket No. 186569 that the decision of the PSC must be vacated because § 601 of the FAAAA, PL 103-305, § 601, does not preempt the collective rate making and classifications found in MCL 475.2(n); MSA 22.532(n), MCL 476.7b; MSA 22.540(2), and MCL 479.6b; MSA 22.571(2). However, I respectfully dissent from the decision of the majority

in Docket No. 186726 affirming the PSC's determination that the leasing provisions in MCL 479.10a; MSA 22.575(1) are preempted by § 601. I would reverse the PSC's determination in this regard because I do not believe that the leasing provisions are preempted by federal law.

The PSC determined, and the majority agrees, that the following statutory provision is preempted by § 601:

> The lease, contract, or arrangement shall provide that the vehicle, at all times, while being operated under the lease, contract, or arrangement, shall be operated only by persons who are employees of the holder who stand in relation to the holder as employee to employer. [MCL 479.10a(6); MSA 22.575(1)(6).]

I do not find the above statutory provision to be preempted for several reasons. First, the legislative history of the FAAAA indicates that Congress did not intend to preempt leases. Specifically, H R Conf Rep No 677, 103d Cong, 2d Sess, p 88, states in relevant part:

> After years of official policy against intrastate motor carrier deregulation, the American Trucking Associations issued a position on June 24, 1994 which stated that "ATA will no longer oppose Federal preemption of state regulation of motor carrier rates and entry based on economic factors," with some conditions that would allow regulatory protection to continue for *non-economic factors*, such as liability rules, antitrust immunity to publish documents, insurance, safety, *leasing* and cargo credit rules. The conferees have attempted to address these conditions in Section 11501 of title 49 as amended by this provision. [Emphasis added.]

Second, it is clear from the wording of the federal statute itself and from the legislative history that preemption under § 601 be quite narrow. Section 601(h) is simply labeled "[p]reemption of state economic regulation of motor carriers." Moreover, the "[g]eneral rule" set forth in § 601(h)(1) states that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of any motor carrier." (Emphasis added.) The statute also includes "[m]atters not covered," § 601(h)(2), which includes safety-related requirements, insurance-related requirements, the transportation of household goods, and size and weight limitations on highways. Further, the legislative history indicates:

> The central purpose of his legislation is to extend to all affected carriers, air carriers and carriers affiliated with direct air carriers through common controlling ownership on the one hand and motor carriers on the other, the identical intrastate preemption of prices, routes and services as that originally contained in Section 105(a), 49 USC App 1305(a)(1), of the Federal Aviation Act. [H R Conf Rep, *supra*, p 83.]

Thus, it is clear from the statute and from the legislative history that Congress intended that federal preemption of state laws be narrowly drawn.

The question, then, is whether the PSC correctly determined that our statutory provision concerning leasing related to a price, route, or service of a motor carrier. The PSC determined that the leasing provision was designed to benefit organized labor and constituted the type of state-imposed economic regulation that § 601 was intended to preempt. The Michigan Teamsters Joint Council No. 43 argued that the leas-

ing provision was related to safety, fitness, and adequacy of insurance. I agree with the position taken by the Teamsters.

MCL 469.10a(6); MSA 22.575(1)(6) requires that the vehicle be "operated only by persons who are employees of the holder who stand in relation to the holder as employee to employer." Having control over the driver of the vehicle is surely a safety-related matter. If the motor carrier has selection of and control over the driver, then safety measure would be increased because the motor carrier would be responsible for the driver. There is also an additional concern that an owner-operator is less likely to operate without first obtaining insurance, rather than the motor carrier. Therefore, MCL 469.10a(6); MSA 22.575(1)(6) is better read as assuring that leased equipment operates under the control of a motor carrier and that the carrier is fully responsible for the driver and the safety and insurance of the vehicle.

Again, I emphasize that the legislative history of § 601 clearly indicates that leasing is considered to be a noneconomic factor. Accordingly, I believe that the PSC's finding that MCL 469.10a(6); MSA 22.575(1)(6) is preempted is an error of law that must be reversed. MCL 462.26(8); MSA 22.45(8); *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm*, 219 Mich App 653, 659; 557 NW2d 918 (1996).