*In re* COMPLAINT OF KNOX

Docket No. 230755. Submitted January 9, 2003, at Lansing. Decided February 21, 2003, at 9:05 A.M. Leave to appeal denied, 468 Mich 903.

Mark and Sheryl Knox filed a complaint with the Public Service Commission, alleging that Lotel, Inc., switched their long-distance telephone service without authorization. After a contested-case hearing before a referee, the commission found that Lotel violated sections 502 and 505 of the Michigan Telecommunications Act (MTA), MCL 484.2502 and MCL 484.2505, and the commission's antislamming procedures. Lotel filed an appeal with the Ingham Circuit Court under MCL 462.26(7), but that court, Carolyn Stell, J., issued an order transferring the appeal to the Court of Appeals under MCL 462.26(3), concluding that the appeal should have originally been filed with the Court of Appeals.

The Court of Appeals *held*:

1. The Court of Appeals lacks subject-matter jurisdiction to decide the appeal because the commission's order determining that Lotel violated the MTA and the commission's antislamming procedures was not an order fixing any rates, fares, charges, classifications, regulations, practices, or services of a provider, or affecting a provider in general, for purposes of establishing jurisdiction of the appeal with the Court of Appeals under MCL 462.26(1).

2. The commission's order fell squarely within the language of MCL 462.26(7) because the order pertained to the application of existing commission antislamming rules to individual customers, Mark and Sheryl Knox, under the specific facts presented in the contested-case proceedings, thus vesting jurisdiction of the appeal with the Ingham Circuit Court. The matter must be transferred to the Ingham Circuit Court.

Remanded.

TELECOMMUNICATIONS — TELEPHONE TOLL SERVICE — UNAUTHORIZED CHANGES IN SERVICE PROVIDERS — CONTESTED-CASE PROCEEDINGS — APPEAL.

Any appeal from an order of the Public Service Commission following contested-case proceedings on a complaint by a telephone-service subscriber that the provider of the subscriber's toll service was changed without the subscriber's authorization and in violation of

Public Service Commission rules must be filed in the Ingham Circuit Court (MCL 462.26[7]).

*Early, Lennon, Crocker & Bartosiewicz, P.L.C.* (by *Lawrence M. Brenton*), for Lotel, Inc.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Michael A. Nickerson,* Assistant Attorneys General, for the Michigan Public Service Commission.

Before: MURRAY, P.J., and SAWYER and FITZGERALD, JJ.

MURRAY, P.J. Lotel, Inc., doing business as Coordinated Billing Services, appeals the April 24, 2000, order of the Public Service Commission that found that Lotel had violated the antislamming provisions set forth in the Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.,* and commission rules. The threshold issue in this case is whether, under the specific facts of this case, this Court has jurisdiction over an appeal from a commission order finding a telecommunications provider to have violated the MTA's "antislamming" provision following a contested-case hearing. We conclude that the Ingham Circuit Court, rather than this Court, has jurisdiction to hear the initial appeal in such a case. Accordingly, we transfer this case to the Ingham Circuit Court. MCL 462.26(3).

### I. PUBLIC SERVICE COMMISSION PROCEEDINGS

On October 27, 1999, Mark and Sheryl Knox filed a complaint with the commission against Lotel, alleging that their toll service had been switched by Lotel without their authorization in violation of the MTA,

and in particular its "antislamming" provision, MCL 484.2505.[1]

Less than two months after the filing of the complaint, a contested hearing was held before a commission hearing referee. The referee heard testimony from the Knoxes, two witnesses, and an expert witness from Lotel, admitted into evidence seventeen exhibits and received posthearing briefs from the Knoxes, the commission, and Lotel. The referee subsequently issued his proposal for decision in which he found Lotel to have violated the antislamming provision of the MTA when it switched the Knoxes' toll service without their authorization.[2] The referee therefore recommended that the commission order Lotel to pay the Knoxes $500 for their time spent on the case and fine Lotel $10,000 for its violation of law.

Timely exceptions to the referee's proposal for decision were filed by the commission. After addressing procedural arguments regarding Lotel's untimely filing of exceptions, the commission found that Lotel had "switched the Knox's [sic] toll service without authorization, in violation of Sections 502 and 505 of the Act and the Commission's antislamming procedures adopted in case number U-11900." As a result of this finding, the commission ordered Lotel to pay a $20,000 fine, to pay the Knoxes $1,235.64 as restitu-

---

[1] "Slamming" is the common name given to the illegal practice of switching a long-distance user's toll service without the user's authorization. *In re Martinez Complaint*, 251 Mich App 148, 149; 649 NW2d 403 (2002).

[2] This was the sole contested issue. Although Lotel presented the referee with a short audiotape that it claimed contained Mrs. Knox's authorization for the switch, the referee found as a fact that Mrs. Knox had not provided such authorization. The referee came to this conclusion by accepting the testimony of Mrs. Knox to that effect.

tion, and to cease and desist from "further violations of the Act and the Commission's anti-slamming procedures." The commission denied Lotel's motion for rehearing.

Not pleased with the commission's order, Lotel filed an appeal with the Ingham Circuit Court pursuant to MCL 462.26(7). However, pursuant to MCL 462.26(3), that court subsequently issued an order transferring the case to this Court, concluding that the appeal should have originally been filed with this Court.

## II. ANALYSIS

Lotel first argues that this Court lacks subject-matter jurisdiction to initially hear this appeal. Lotel contends, as it did in the circuit court, that this case in the first instance should be heard by the Ingham Circuit Court. Jurisdiction is the power of a court to act or, stated differently, it provides the authority for a court to hear and determine a case. *In re AMB*, 248 Mich App 149, 166; 640 NW2d 262 (2001). Subject-matter jurisdiction pertains to the court's abstract power over a class of cases, not to whether the facts of a particular case present a claim subject to the court's authority. *Traveller's Ins Co v Detroit Edison*, 465 Mich 185, 204; 631 NW2d 733 (2001). Subject-matter jurisdiction cannot be conferred by consent of the parties, *Lohman v Lohman*, 312 Mich 102, 106; 19 NW2d 502 (1945), and a court must take notice when it lacks jurisdiction regardless of whether the parties raised the issue. *In re AMB*, *supra* at 166-167. Whether we have subject-matter jurisdiction under the statutes of our state is a legal question. *Lapeer Co*

*Clerk v Lapeer Circuit Judges*, 465 Mich 559, 566; 640 NW2d 567 (2002).

The jurisdiction of this Court is set forth in Const 1963, art 6, § 10, which provides that "[t]he jurisdiction of the court of appeals shall be provided by law . . . ." Courts are not permitted to enlarge or diminish the jurisdiction conferred by statute or the constitution. *In re Hatcher*, 443 Mich 426, 433; 505 NW2d 834 (1993).

As part of the MTA, the Legislature set forth how Commission orders would be appealed to the judiciary. Specifically, subsection 203(7) of the MTA, MCL 484.2203(7),[3] provided:

> An order of the commission shall be subject to review as provided by section 26 of Act No. 300 of the Public Acts of 1909, being section 462.26 of the Michigan Compiled Laws.

MCL 462.26, in turn, provides for initial appeals to either this Court or the Ingham Circuit Court, with the determining factor being what type of order is being appealed:

> (1) Except as otherwise provided [by statutory provisions not applicable here], . . . and except as otherwise provided in this section, any common carrier or other party in interest, being dissatisfied with *any order of the Commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices, or services, may* within 30 days from the issuance and notice of that order *file an appeal as of right in*

---

[3] The MTA, including § 203, was amended by 2000 PA 295, with immediate effect on July 17, 2000. However, because the Knoxes' complaint was filed in October 1999, the amendatory act "does not amend, alter, or limit" the present case. MCL 484.2203(16), as amended by 2000 PA 295. All references to the MTA in this opinion, unless otherwise noted, will be to the provisions in effect at the time the Knoxes' complaint was filed.

*the court of appeals.* The court of appeals shall not have jurisdiction over any appeal that is filed later than the 30-day appeal period provided for in this subsection.

\*      \*      \*

(7) *An appeal from a commission order pertaining to the application of existing commission rules, tariffs, or rate schedules to an individual customer in a contested case shall be filed in the circuit court for the county of Ingham* within 30 days of the issuance and notice of an order. [Emphasis added.]

Lotel argues that this Court lacks initial jurisdiction over this appeal because this is a contested case involving application of an existing commission rule to an individual customer and, therefore, should have been heard by the Ingham Circuit Court. MCL 462.26(7). The commission, on the other hand, argues that this Court has initial appellate jurisdiction under MCL 462.26(1) because the commission order "involved the application of the provisions of the MTA to the practices and services of a telecommunication service provider." Resolution of this issue necessitates a determination whether this case falls under MCL 462.26(1), as an order "fixing" any rate, charge, classification, regulation, practice, or service, or under MCL 462.26(7), as an order applying an existing commission rule to an individual customer. In *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001), our Supreme Court set forth the rules governing the important function of interpreting a statute:

In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous,

judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [Citations omitted.]

The answer to the question presented is determined by how the statutory term "fixing" is defined. MCL 462.26(1). Although the answer would likely be quite clear if the statute contained a definition of "fixing," it does not. Thus, rather than being left to our own devices to determine the intended meaning, we may consider the dictionary definition, *People v Stone*, 463 Mich 558, 563; 621 NW2d 702 (2001), citing *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999), while also taking into account the context in which the word is used. *Phillips v Jordan*, 241 Mich App 17, 22 n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997).

We previously interpreted this same word in *In re Motor Carrier Act*, 223 Mich App 288, 296-299; 566 NW2d 299 (1997). In that case, the commission issued an order giving guidance to motor carriers on any effect the Federal Aviation Administration Authorization Act, 49 USC 14501, had on the Motor Carrier Act, MCL 475.1 *et seq. In re Motor Carrier Act, supra* at 292, 296. One issue on appeal was whether these orders constituted the "fixing" of rates, fares, practices, and services for purposes of MCL 462.26(7). *In re Motor Carrier Act, supra* at 296-297. Resorting to the dictionary, we concluded that one of several definitions of "fixed" was to "adjust or regulate." *Id.* at 297. We held in that case that the commission orders

constituted the "fixing" of many practices of motor carriers because, through the orders, the commission was declining to enforce numerous provisions of the Motor Carrier Act. *Id.* Indeed, we noted that the commission orders created a "sweeping change in the PSC's enforcement practices" and "substantially changed the regulatory framework for the trucking industry in Michigan." *Id.* at 298.

Just over two years later, another panel of this Court considered the provisions of MCL 462.26(1), albeit in the context of the appealability to this Court of nonfinal orders of the Commission. In *Attorney Gen v Michigan Pub Service Comm*, 237 Mich App 27; 602 NW2d 207 (1999), the commission issued two orders in a case involving Detroit Edison's application of its 1997 power-supply cost-recovery clause plan and its five-year rate forecast. One commission order pertained to the referee's denial of Detroit Edison's motion for a protective order, while the other order addressed whether the referee should decide issues surrounding Edison's five-year forecast. Neither of these orders was a final, dispositive order.

An appeal was taken to the Ingham Circuit Court, but that court transferred the case to this Court pursuant to MCL 462.26(3). We then sent the case back to the circuit court, but thereafter the Supreme Court ordered this Court to decide the jurisdictional issue. *Attorney Gen, supra* at 34. Although the primary issue in the case was whether a nonfinal order of the commission could be appealed under MCL 462.26, because we answered "yes" to that question, we then had to determine which court had initial jurisdiction. *Attorney Gen, supra* at 37-39. This required the Court to determine if the orders fell under the "fixing" lan-

guage of MCL 462.26(1). We held that neither order constituted the "fixing" of a rate, regulation, practice, or service, because each order was specific to the case and the parties before the commission:

> Similarly, the PSC orders at issue in this case do not fix any rate, regulation, practice, or service. Instead, one pertains to procedures to be followed and the timing of consideration of Edison's five-year PSCR forecast, and the other involves a discovery dispute regarding allegedly sensitive and confidential information. Both orders are thus specific to this case and the parties to it. [*Attorney Gen, supra* at 38].

In so holding, we contrasted the orders at issue in *In re Motor Carrier Act, supra*, which had a broad, sweeping effect on the industry at large, from the orders at issue in *Attorney Gen, supra*, which were specific to the facts and parties before the commission. *Id.* at 38 n 1.

Reading these two cases together, we believe *In re Motor Carrier Act* and *Attorney Gen* stand for the proposition that to constitute an order "fixing" a rate, regulation, practice, or service, a commission order must be addressing rates, regulations, practices, or services of a provider, or affecting a provider in general, as opposed to orders applying existing rules to the specific facts determined through a contested-case hearing. This conclusion is consistent with the term "fixing" as used by the Legislature in MCL 462.26(1) and the specific provision of MCL 462.26(7).

As previously noted, there are two appeal provisions under MCL 462.26. One is subsection 26(1), discussed above. The other is subsection 26(7), which provides for appeals to the Ingham Circuit Court from commission orders "pertaining to the application of

existing commission rules, tariffs, or rate schedules to an individual customer in a contested case . . . ." MCL 462.26(7). We conclude that subsection 26(7), rather than subsection 26(1), applies to this case.

The complaint in this case was brought by the Knoxes, who are "end users," against Lotel for switching their toll service in violation of the antislamming provision of the MTA, MCL 484.2505. Accordingly, the commission held a contested-case hearing on the complaint as specifically provided for by MCL 484.2506(1). Additionally, in its decision, the commission applied its existing antislamming rule that had been set forth in case number U-11900. Finally, the decision applied that existing rule to an individual customer's specific factual situation, i.e., it concluded, on the basis of the testimony of Mrs. Knox, that Lotel had not obtained her authorization to switch toll-service providers. Accordingly, this case falls squarely within the type of order addressed by the Legislature in MCL 462.26(7).[4]

We reject the commission's argument that this case does not fall under subsection 26(7) because the commission order involves application of the MTA "to the practices and services of a telecommunication service provider." Initially, we note that even if we accepted the commission's argument as stated, it would not result in a conclusion that this Court has jurisdiction, because the test under subsection 26(1) is whether

---

[4] We note that in its brief the commission argues that MCL 462.26(7) is inapplicable because this case does not involve the application of rates or tariffs to an individual customer. The commission's argument, however, neglects the fact that the statute also applies to the application of commission "rules" to an individual customer. We must, of course, give effect to all the words of the statute. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

the order is "fixing" a rate, schedule, practice, or service, not, as the commission argues, whether the order "applies" the MTA to a provider's practices or services.

More importantly, however, is that the order at issue in this case is in no way "fixing" any "rate or rates, fares, charges, classifications, . . . regulations, practices, or services . . . ." MCL 462.26(1). Whether we utilize one of the general dictionary definitions of "fixing"—to "adjust or regulate," *In re Motor Carrier Act, supra* at 297, or utilize the legal dictionary definition of "fix"—"to announce (an exchange price, interest rate, etc.)" Black's Law Dictionary (7th ed, 1999), p 651,[5] it is clear that the commission's order in this case neither considered nor resulted in the "fixing" of any practice or service of Lotel. Indeed, the commission did not conclude that Lotel had improper practices or services. Instead, it merely upheld the referee's factual determination that, in this particular case, Lotel had not obtained authorization from the end user. Thus, the order in this case is quite different in scope and effect from the orders in other cases that have addressed whether the commission orders constituted the "fixing" of rates, fares, and so forth. See, e.g., *Attorney Gen, supra* at 38; *In re Motor Carrier, supra* at 297-298; *Consumers Power Co v Pub Service Comm,* 88 Mich App 633, 639; 278 NW2d 702

---

[5] When a term has a specific legal connotation, it is permissible to consider the legal definition of that term in determining its proper meaning. *State Fire Marshall v Lee,* 101 Mich App 829, 833-834; 300 NW2d 748 (1980). Because "fixing" can have a specific legal meaning, it may be more appropriate to consider the legal definition for determining the common and approved usage of the word in the context of Commission actions. MCL 8.3a; *Horace v Pontiac,* 456 Mich 744, 756; 575 NW2d 762 (1998); *Phillips, supra.*

(1979) (recognizing that a denial of a rate increase constitutes an order "fixing" rates because the rate was established by the denial of an increase).[6]

### III. CONCLUSION

For these reasons, we hold that this Court lacks jurisdiction to hear the initial appeal[7] of the commission order because it involves the applicability of an existing commission rule to an individual customer's antislamming complaint as a result of a contested-case hearing. We therefore transfer this case to the Ingham Circuit Court for its consideration of the merits of this appeal.

---

[6] We reject the commission's argument that simply because we have appeals docketed in this Court, and have decided cases under the antislamming statute, that this somehow is a recognition of this Court's jurisdiction. Nothing could be further from the truth, for in none of the cases previously decided was this jurisdictional issue raised or decided. See, e.g., *In re Martinez Complaint, supra; In re Canales Complaint,* 247 Mich App 487; 637 NW2d 236 (2001).

[7] Although this Court is not statutorily authorized to hear the initial appeal, either party could seek leave to appeal from any subsequent circuit-court decision.