ROADWAY EXPRESS, INC., Plaintiff-Appellant, *v.* THE TREASURER OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

Fourth District No. 4—83—0374

Opinion filed December 9, 1983.

MILLS, P.J., concurring in part and dissenting in part.

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W. Allen and Mark D. Howard, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Hercules F. Bolos, and Edward P. O'Brian, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff filed suit in the circuit court of Sangamon County seeking to obtain a refund of certain franchise fees assessed by the Illinois Commerce Commission pursuant to section 18—801(2)(b) of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—801(2)(b)). Both plaintiff and the defendants filed motions for summary judgment and the trial court allowed the defendants' joint motion and denied the plaintiff's motion. This appeal followed.

The essential facts are not disputed. Plaintiff is an Ohio carrier and on September 23, 1981, the Illinois Commerce Commission (ICC) adopted a resolution requiring all Ohio carriers to pay a franchise fee of $31, the same fee being charged to Illinois carriers by the State of Ohio. The authority upon which the resolution was based is found in

section 18—801(2)(b) of the Illinois Motor Carrier of Property Law which states:

> "(b) The Commission may negotiate and enter into written Reciprocity Agreements with other states and provincial jurisdictions. However, in the absence of an agreement the Commission may examine their laws and requirements. As a result of that examination, the Commission may require any motor carrier from a foreign jurisdiction, which does not extend such reciprocal benefits and privileges, to pay an appropriate fee based upon what the jurisdiction charges the Illinois motor carrier. The Commission shall file a copy of each written Agreement or Declaration with the Secretary of State." Ill. Rev. Stat. 1981, ch. 95½, par. 18—801(2)(b).

It appears that Illinois charged the carriers of other States a maximum fee of $2 under reciprocity agreements but that repeated efforts to negotiate such an agreement with the State of Ohio had come to naught.

On December 7, 1981, plaintiff paid to the ICC the sum of $6,712 for 3,356 identification stamps for its trucks, this being at the rate of $2 each. No challenge is made to the $2 charge. The ICC demanded an additional $29 for each stamp pursuant to the resolution of September 23, and on December 21, 1981, plaintiff paid the additional $97,324 under protest. The ICC placed that sum in the protest fund where presumably it still remains. The instant suit was then filed on January 12, 1982.

While it is immaterial to our disposition of this case, the record discloses that subsequent to its filing, this State and the State of Ohio did enter into a reciprocity agreement providing for an annual fee of $1.

On appeal plaintiff has raised a variety of issues claiming constitutional and statutory violations. However, we need not reach all of these, since we find that the disposition of the fees collected by the ICC under its resolution of September 1981 is in violation of Federal law.

At the outset, it should be made clear that the ICC was possessed of the power to adopt the resolution. Regulation of interstate commerce generally is the province of the Federal government. Where Congress has chosen to regulate a particular field of commerce, State regulations affecting that field will be invalidated only when it is apparent that Congress has preempted the field or when State law conflicts with Federal law. *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305.

Congress has chosen to regulate transportation through the Interstate Commerce Act, but the relevant language in section 11506 of that Act (49 U.S.C. sec. 11506 (Supp. IV 1980)) demonstrates that Congress did not intend to preempt the field. That language is as follows:

> "(b) The requirement of a State that a motor carrier, providing transportation subject to the jurisdiction of the Commission under subchapter II of Chapter 105 of this title and providing transportation in that State, register the certificate or permit issued to the carrier *** is not an unreasonable burden on transportation *** when the registration is completed under standards of the Commission under subsection (c) of this section. When a State registration requirement imposes obligations in excess of the standards, the part in excess is an unreasonable burden."

Pursuant to this authority, the Interstate Commerce Commission promulgated the standards which are set forth in section 1023.33 of title 49 of the Code of Federal Regulations (49 C.F.R. sec. 1023.33 (1981)), and which state in relevant part:

> "The application shall be duly completed and executed by an official of the motor carrier, and shall be accompanied by the fee, if any, prescribed by the law of such State; provided, however, that such fee shall not exceed $5 for the issuance of each such identification stamp; and provided further (when the State commission assigns an identification number in lieu of issuing an identification stamp or stamps), that such fee shall not exceed $5 for each vehicle operated under the authority of the motor carrier identified in the cab card bearing such identification number. The prescription of the maximum fee of five dollars for issuance of such identification stamp or number shall not preclude a State from imposing an additional fee in a reasonable amount to be paid to a State commission prior to the issuance of such stamp or number, if such additional fee shall be subject to exclusive use by the State commission and used by it solely for defraying the cost of the regulation of carriers by highway operating within the borders of such State and the enforcement of laws pertaining thereto. The State commission shall maintain adequate records to identify the receipt and disbursement of such funds collected pursuant to the provisions of this section."

We note, again parenthetically, that section 1023.33 was amended in 1982 to set an absolute limit of $10 on identification stamp fees.

The foregoing regulation demonstrates that the ICC had unrestricted power to impose a fee of $5. It also demonstrates that the ICC had limited powers to impose an additional fee: (1) the additional fee must be reasonable, and (2) it must be used to defray the costs of regulating the carriers operating within the State and of enforcing the laws concerning them.

Plaintiff has argued that the additional fee in the case at bar is not reasonable, claiming in substance that anything over $5 is *prima facie* unreasonable and that the burden of proof is then placed upon the defendant to demonstrate reasonableness. We do not agree. Plaintiff cites no authority for the proposition and such an interpretation would make a nullity of the provisions for an additional fee.

However, we need not pursue the argument since the record is plain that the ICC has not complied with the second proviso concerning the disposition of the fee.

As has been indicated, plaintiff's payment of $29 per stamp reposes in the protest fund. The parties entered into certain stipulations regarding its disposition as follows:

"Had the money that was paid under protest in this action not been paid into the Protest Fund, the money would have been placed into the Motor Vehicle Fund and would have been used for the administering of the Illinois Motor Carrier of Property Law and the Illinois Commercial Relocation of Trespassing Vehicles Law.

Had the money that was paid under protest in this action not been paid into the Protest Fund, it would have been paid into the Motor Vehicle Fund and would have been pooled with other monies in the Motor Vehicle Fund, and no separate or special accounting would have been made regarding such fund after they are pooled.

Funds from the Motor Vehicle Fund are used to administer the Illinois Commercial Relocation of Trespassing Vehicles Law."

The nature of the "motor vehicle fund" is found in section 18—802 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1981, ch. 95½, par. 18—802), which provides:

"All fees, fines and penalties herein prescribed shall be promptly paid into a special fund in the State Treasury by the Commission. Said special fund shall be known as the 'motor vehicle fund.' The money in the 'motor vehicle fund' shall be used to defray the expenses of the administration of this Chapter and Chapter 18a [The Illinois Commercial Relocation of Tres-

passing Vehicles Law], and any money in such fund not needed for such purposes shall be used for repairs and maintenance of state highways."

The Illinois Commercial Relocation of Trespassing Vehicles Law is found in chapter 18a of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 18a—100 *et seq.*). The general purpose of the law is found in its title and in its declaration of policy (Ill. Rev. Stat. 1981, ch. 95½, par. 18a—101), which states in pertinent part, "to supervise and regulate the commercial removal of trespassing vehicles from private property, and the subsequent relocation and storage of such vehicles." It is thus apparent that this law is unrelated to motor carriers of property and is aimed at the correction and regulation of a different subject matter. The term "carrier" does not appear anywhere in chapter 18a. The disposition of funds is directed in section 18a—602 (Ill. Rev. Stat. 1981, ch. 95½, par. 18a—602), which largely parallels the provisions for the motor vehicle fund set forth above. It directs that the fees be paid into the motor vehicle fund and reiterates *in haec verba* the final sentence of section 18—802 recited above.

It is thus apparent that the motor vehicle fund may be expended for at least four purposes: (1) regulation of interstate carriers under chapter 18; (2) regulation of intrastate carriers under chapter 18; (3) regulation of commercial relocators under chapter 18a; and (4) repairs and maintenance of highways. This disposition is at odds with the Federal mandate under 49 C.F.R. sec. 1023.33 (1981) set forth above providing that the additional fees "shall be *** used *** *solely* for defraying the cost of the regulation of carriers by highway operating within the borders of such State and the enforcement of laws pertaining thereto." (Emphasis added.) The regulation further requires that the ICC maintain adequate records to identify the receipt and disbursement of the additional fees.

Under the stipulations recited above, it is apparent that both of these Federal requirements have not been met. The motor vehicle fund is not used exclusively for the regulation of carriers by highway and no separate accounting is made of the additional fees. They are simply commingled with all other moneys in the fund.

It is therefore our opinion that while the additional fees in this case were legally imposed, they were illegally disbursed by the ICC. Since they are still *in esse* and identifiable, the plaintiff is entitled to a refund for all money in excess of $5 per stamp, the latter being the maximum under the regulation in force at the time of payment.

The summary judgment order of the circuit court of Sangamon County in favor of the defendants is therefore reversed. The defend-

ants are ordered pursuant to this court's authority under Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)) to refund to the plaintiff the sum of $87,256 in accordance with the views expressed herein.

Reversed and refund ordered.

GREEN, J., concurs.

PRESIDING JUSTICE MILLS, concurring in part and dissenting in part:

I agree with my colleagues that the additional fees in this case were legally imposed.

After all, if another State slaps Illinois carriers with a stiff franchise fee, and refuses to enter into a mutual *quid pro quo* for a less burdensome charge, I find no legal or logical *impedimenta* to Illinois reciprocating in kind.

But I cannot agree that just because the fees were not properly segregated and disbursed, plaintiff gets a refund! Why should plaintiff reap a windfall when the only question is *how* the fees were spent? Such logic escapes me.

I would simply affirm the $31 fee and remand with directions to the Treasurer of Illinois and the Illinois Commerce Commission that they expend the total fees "solely for defraying the cost of the regulation of carriers by highway," in accord with Federal mandate, and report same back to the trial court.

Finito!