WESTLAKE TRANSPORTATION, INC v PUBLIC SERVICE COMMISSION
TROY CAB, INC v PUBLIC SERVICE COMMISSION

Docket Nos. 226052, 226053, 226122, 226137. Submitted December 17, 2002, at Lansing. Decided March 11, 2003, at 9:00 A.M. Leave to appeal sought.

Westlake Transportation, Inc., and others brought an action in the Court of Claims against the Public Service Commission (PSC) and others, alleging that various sections of the Michigan Motor Carrier Act (MCA), MCL 475.1 *et seq.*, were unconstitutional because federal law preempted the state laws. Troy Cab, Inc., and others also brought an action in the Court of Claims, making similar allegations. The Court of Claims, James R. Giddings, J., allowed American Trucking Association, Inc., and TNT Holland Motor Express, Inc., to intervene in the actions as plaintiffs alleging violation of the Commerce Clause, US Const, art I, § 8, cl 3. The cases were consolidated by the Court of Claims, and the actions were certified as class actions. The Court of Claims denied motions for summary disposition by the plaintiffs and intervening plaintiffs and granted a motion for summary disposition by the defendants, concluding that § 601 of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), PL 103-105, § 601, did not preempt the provisions of MCL 478.2(1) and (2) that require all motor carriers to pay an annual fee of $100 for each vehicle for the administration of the MCA, because the federal law did not preempt safety-related regulatory fees. The Court of Claims also found that MCL 478.2(2) was not preempted because the federal law imposed a $10 maximum fee on "participating states," not "registration states." The Court of Claims further determined that MCL 478.2(1) did not implicate the Commerce Clause because it did not burden foreign motor carriers more heavily as compared to Michigan motor carriers engaged in interstate commerce, because the state statute only affects Michigan motor carriers who engage solely in intrastate commerce. The plaintiffs and the intervening plaintiffs appealed following the denial of the plaintiffs' motion for reconsideration. The appeals were consolidated.

The Court of Appeals *held*:

1. The relevant federal statutes and regulations provide that with regard to the Single State Registration System, a registration state is simply a participating state in which a motor carrier is registering. Michigan is a participating state and, therefore, can be a registration state. Pursuant to 49 USC 11506(c)(2)(B)(iv) and (v) a registration state may require a registering motor carrier to pay a $10 fee for each vehicle for the filing of the carrier's proof of insurance and may not charge a fee for the filing of the carrier's Interstate Commerce Commission interstate operating permit.

2. The fee required by MCL 478.2(2), which provides that a motor carrier licensed in Michigan shall pay an annual fee of $100 for each vehicle operated that is registered in Michigan and operating entirely in interstate commerce, is a regulatory fee imposed for the administration of the MCA and enforcement of safety regulations. Because the fee is not a registration fee, it is not subject to preemption by 49 USC 11506. The federal statute and regulations address registration requirements only and do not prohibit state regulatory fees. The Court of Claims did not err in granting summary disposition in favor of the defendants with regard to this issue.

3. The Court of Claims did not abuse its discretion in denying the plaintiffs' request to stay the proceedings in order to conduct additional discovery.

4. The intrastate fees provided for in MCL 478.1 and MCL 478.2(1) are regulatory fees, not unconstitutional taxes. The Court of Claims did not clearly err in finding that the fees were not wholly disproportionate. The Court of Claims did not err in granting the defendants summary disposition with regard to this issue.

5. The intrastate and interstate fees charged pursuant to the MCA do not violate the federal or state guarantee of equal protection of the law. There is a rational relation to a legitimate state purpose in applying the fees to "for hire" motor carriers but not to private motor carriers. The Court of Claims did not err in granting the defendants summary disposition with regard to this issue.

6. The intrastate fee imposed by MCL 478.2(1) does not violate the Commerce Clause. The Court of Claims erred in finding that the Commerce Clause was not implicated on the basis that the fee applies to intrastate carriers only. Because the fee is imposed on any vehicle that operates intrastate pursuant to a certificate of authority, even if it also travels interstate, the fee affects interstate commerce, and thus implicates the Commerce Clause.

7. The regulatory fee of $100 for motor carriers' vehicles that are licensed in Michigan and travel solely intrastate or travel both intrastate and interstate, MCL 478.2(1), and for motor carriers'

vehicles that are licensed in Michigan and travel solely interstate, MCL 478.2(2), regulates evenhandedly, does not directly regulate interstate commerce, and does not result in economic protectionism or discrimination. The burden placed on interstate commerce by the fee is not clearly excessive in relation to the state's substantial interest in regulating safety on the highways. The finding of the Court of Claims that the fee does not violate the Commerce Clause, even though reached for the wrong reason, must be affirmed.

Affirmed.

1. CONSTITUTIONAL LAW — CONFLICT OF LAWS — INTERSTATE COMMERCE — PREEMPTION.

The $100 fee that a motor carrier licensed in Michigan must pay annually for each vehicle that is registered in Michigan and operated entirely in interstate commerce is a regulatory fee imposed for the administration of the safety regulations of the Michigan Motor Carrier Act; the fee is not a registration fee subject to preemption under federal law (49 USC 11501, 11506; PL 103-105, subsection 601[h]; MCL 478.2[2]).

2. TAXES — MOTOR CARRIER FEES — REGULATORY FEES.

The fees provided for in MCL 478.1 and MCL 478.2(1) with regard to intrastate motor carriers are regulatory fees, not taxes.

3. CONSTITUTIONAL LAW — MOTOR CARRIER ACT — EQUAL PROTECTION.

The provisions of the Michigan Motor Carrier Act that impose regulatory fees on interstate and intrastate motor carriers that are "for hire" motor carriers but not private motor carriers have a rational relationship to a legitimate state purpose and do not violate the federal and state equal-protection guarantees (US Const, Am XIV; Const 1963, art 1, § 2; MCL 475.1 *et seq.*).

4. CONSTITUTIONAL LAW — MOTOR CARRIER ACT — INTERSTATE COMMERCE.

The provisions of the Michigan Motor Carrier Act imposing regulatory fees on motor carriers' vehicles licensed in Michigan that travel solely interstate or travel both interstate and intrastate and also on vehicles licensed in Michigan that travel solely interstate do not violate the Commerce Clause (US Const, art I, § 8, cl 3; MCL 478.2[1], [2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges, Henry J. Boynton, David M. Gadaleto*, and *William W. Derengoski*, Assistant Attorneys General, for the defendants.

*Foster, Swift, Collins & Smith, P.C.* (by *Robert E. McFarland*), and *Scopelitis, Garvin, Light & Hanson, P.C.* (by *James Hanson*), for the plaintiffs.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael S. Ashton*), and ATA Litigation Center (by *Robert Digges, Jr.*), for the intervening plaintiffs.

Before: MARKEY, P.J., and SAAD and SMOLENSKI, JJ.

SMOLENSKI, J. In these consolidated class actions, plaintiffs, individual class-representative trucking companies, and intervening plaintiffs, two trucking companies, appeal by right from a December 30, 1998, judgment of the Court of Claims that granted summary disposition in favor of defendants. The appeals were consolidated. We affirm.

I

This case involves the effect of several federal laws, specifically 49 USC 11501, 49 USC 11506, and subsection 601(h) of the Federal Aviation Administration Authorization Act of 1994 (FAAAA), PL 103-105, subsection 601(h), on various provisions of Michigan's Motor Carrier Act (MCA), MCL 475.1 *et seq.* This litigation began on January 3, 1995, when plaintiffs Westlake Transportation, Inc., et al. filed their complaint, alleging that the state's $100 annual fees for interstate and intrastate motor carriers were unconstitutional because federal laws, 49 USC 11506 and 49 USC 11501, respectively, preempted the state laws. On January 9, 1995, Troy Cab, Inc., et al. filed their complaint, and made similar allegations.

In Michigan, since 1933, motor-carrier regulation has been pursuant to the Michigan MCA. The act

authorizes the Michigan Public Service Commission (PSC) to enforce the act. MCL 475.1(c); MCL 475.2. Under the MCA, motor carriers must pay a fee of $100 for each application filed with the commission for a certificate of authority or for a permit to operate intrastate. MCL 478.1. Also, motor carriers are required to pay an annual fee of $100 a vehicle for the administration of the act. MCL 478.2(1) and (2). Subsection 1 applies to motor-carrier vehicles that operate intrastate pursuant to a certificate of authority, while subsection 2 applies to motor-carrier vehicles licensed in Michigan that engage entirely in interstate commerce.[1] The act also provides that motor carriers that are registered outside Michigan are required to pay a registration fee of $10 a vehicle. MCL 478.7.

In February 1995, intervening plaintiffs filed their complaint, alleging that the intrastate-decal fee violated the Commerce Clause, US Const, art I, § 8, cl 3, and were subsequently granted the right to intervene. Plaintiffs Westlake Transportation, Inc., et al. and intervening plaintiffs both amended their complaints, adopting the other's substantive claims. The plaintiffs' cases were consolidated in April 1995 and the classes were certified in June 1995.

On June 22, 1995, plaintiffs filed two separate motions for partial summary disposition pursuant to MCR 2.116(C)(10): one regarding their intrastate-preemption claim and the other regarding their interstate-preemption claim. On June 30, 1995, intervening plaintiffs filed their motion for partial summary disposition pursuant to MCR 2.116(C)(10), regarding their

---

[1] The fees in MCL 478.1 and 478.2(1) will be referred to as the "intrastate fees," and the fee in MCL 478.2(2) will be referred to as the "interstate fee."

claim alleging violation of the Commerce Clause. On October 27, 1995, defendants renewed their own motion for summary disposition. The Court of Claims issued its opinion on October 13, 1998, concluding that plaintiffs' and intervening plaintiffs' claims were meritless, and denied their motions for partial summary disposition in an order entered on November 12, 1998. Subsequently, the court granted defendants' motion for summary disposition "for the reasons defendants stated in their November 10, 1998 supplemental brief," which relied on the court's October 13, 1998, opinion.

The court concluded that § 601 of the FAAAA did not preempt MCL 478.2(1) because the federal law did not preempt safety-related regulatory fees. The court also found that MCL 478.2(2) was not preempted because the federal law imposed the $10 maximum only on "participating states," not "registration states." The court further determined that MCL 478.2(1) did not implicate the Commerce Clause because it did not burden foreign motor carriers more heavily as compared to Michigan motor carriers engaged in interstate commerce, since the state statute only affects Michigan motor carriers who engage solely in intrastate commerce. Plaintiffs filed a motion for reconsideration, which was denied. Plaintiffs and intervening plaintiffs now appeal by right.

II

Summary disposition of all or part of a claim or defense may be granted when

[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is enti-

tled to judgment or partial judgment as a matter of law. [MCR 2.116(C)(10).]

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim, and is reviewed de novo on appeal. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). A motion for summary disposition based on the lack of a material factual dispute must be supported by documentary evidence. MCR 2.116(G)(3)(b); *Meyer v Center Line*, 242 Mich App 560, 574; 619 NW2d 182 (2000). All reasonable inferences are to be drawn in favor of the nonmovant. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 618; 537 NW2d 185 (1995).

III

Plaintiffs argue that MCL 478.2(2) is preempted by federal law, specifically 49 USC 11506.[2] Determining whether federal law preempts a state law presents an issue of statutory construction and is a question of law. *Konynenbelt v Flagstar Bank, FSB*, 242 Mich App 21, 27; 617 NW2d 706 (2000). Congressional intent is the cornerstone of preemption analysis. *Fort Halifax Packing Co, Inc v Coyne*, 482 US 1, 8; 107 S Ct 2211; 96 L Ed 2d 1 (1987).

---

[2] This statute is currently codified as 49 USC 14504; however, we will refer to the law as § 11506.

The Supremacy Clause of the United States Constitution provides Congress with the power to preempt state law. US Const, art VI, cl 2. A general presumption exists in the law against federal preemption. *Duprey v Huron & E R Co, Inc*, 237 Mich App 662, 665; 604 NW2d 702 (1999). Federal preemption occurs only under certain conditions, such as when (1) Congress enacts a federal statute that expresses a clear intent to preempt state law, (2) an outright or actual conflict exists between federal and state law, (3) compliance with both federal and state law is effectively impossible, (4) an implicit barrier to state regulation exists in federal law, (5) Congress has legislated comprehensively, thereby occupying an entire field and leaving no room for supplemental state law, or (6) the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Id.*

49 USC 11506 provided, in part:

> (b) General rule.—The requirement of a State that a motor carrier, providing transportation subject to jurisdiction under subchapter I of chapter 135 and providing transportation in that State, must register with the State is not an unreasonable burden on transportation referred to in section 13501 when the State registration is completed under standards of the Secretary under subsection (c). When a State registration requirement imposes obligations in excess of the standards of the Secretary, the part in excess is an unreasonable burden.
>
> (c) Single State registration system.—
>
> (1) In general.—The Secretary shall maintain standards for implementing a system under which—
>
> (A) a motor carrier is required to register annually with only one State by providing evidence of its Federal registration under chapter 139;

(B) the State of registration shall fully comply with standards prescribed under this section; and

(C) such single State registration shall be deemed to satisfy the registration requirements of all other States.

(2) Specific requirements.—

(A) Evidence of Federal registration; proof of insurance; payment of fees.—Under the standards of the Secretary implementing the single State registration system described in paragraph (1) of this subsection, only a State acting in its capacity as registration State under such single State system may require a motor carrier registered by the Secretary under this part—

(i) to file and maintain evidence of such Federal registration;

(ii) to file satisfactory proof of required insurance or qualification as a self-insurer;

(iii) to pay directly to such State fee amounts in accordance with the fee system established under subparagraph (B)(iv) of this paragraph, subject to allocation of fee revenues among all States in which the carrier operates and which participate in the single State registration system; and

(iv) to file the name of a local agent for service of process.

(B) Receipts; fee system.—The standards of the Secretary—

(i) shall require that the registration State issue a receipt, in a form prescribed under the standards, reflecting that the carrier has filed proof of insurance as provided under subparagraph (A)(ii) of this paragraph and has paid fee amounts in accordance with the fee system established under clause (iv) of this subparagraph;

(ii) shall require that copies of the receipt issued under clause (i) of this subparagraph be kept in each of the carrier's commercial motor vehicles;

(iii) shall not require decals, stamps, cab cards, or any other means of registering or identifying specific vehicles operated by the carrier;

(iv) shall establish a fee system for the filing of proof of insurance as provided under subparagraph (A)(ii) of this paragraph that—

(I) is based on the number of commercial motor vehicles the carrier operates in a State and on the number of States in which the carrier operates;

(II) minimizes the costs of complying with the registration system; and

(III) results in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991; and

(v) shall not authorize the charging or collection of any fee for filing and maintaining evidence of Federal registration under subparagraph (A)(i) of this paragraph.

(C) Prohibited fees.—The charging or collection of any fee under this section that is not in accordance with the fee system established under subparagraph (B)(iv) of this paragraph shall be deemed to be a burden on interstate commerce.

The MCA applies to entities engaged in interstate commerce only to the extent it is consistent with federal law. MCL 476.12. MCL 478.2(2) provides, in pertinent part, "A motor carrier licensed in this state shall pay an annual fee of $100.00 for each vehicle operated by the motor carrier which is registered in this state and operating entirely in interstate commerce."[3]

Plaintiffs contend that the interstate fee was preempted both before and after the implementation of the Single State Registration System (SSRS) on January 1, 1994. With the implementation of the SSRS, § 11506 was amended and significant language changes were made. We will first address plaintiffs' preemption

---

[3] The subsection also provides that the fee is only $50 if the motor carrier begins operations after June 30th of the year. The other provisions in the subsection are not at issue in this appeal.

argument regarding § 11506 after January 1, 1994. However, before we do so, an understanding of the evolution of this federal law is helpful. The United States Supreme Court has summarized this evolution in *Yellow Transportation, Inc v Michigan*, 537 US ___, ___; 123 S Ct 371, 374-375; 154 L Ed 2d 377, 383-384 (2002):

> Beginning in 1965, Congress authorized States to require interstate motor carriers operating within their borders to register with the State proof of their Interstate Commerce Commission (ICC) interstate operating permits. Pub L 89-170, 79 Stat 648, 49 USC § 302(b)(2) (1970 ed). Congress provided that state registration requirements would not constitute an undue burden on interstate commerce so long as they were consistent with regulations promulgated by the ICC. *Ibid.*
>
> Prior to 1994, the ICC allowed States to charge interstate motor carriers annual registration fees of up to $10 per vehicle. See 49 CFR § 1023.33 (1992). As proof of registration, participating States would issue a stamp for each of the carrier's vehicles. § 1023.32. The stamp was affixed on a "uniform identification cab car[d]" carried in each vehicle, within the square bearing the name of the issuing State. § 1023.32(d)-(e). This system came to be known as the "bingo card" system. *Single-State Insurance Registration*, 9 ICC2d 610, 610 (1993).
>
> The "bingo card" regime proved unsatisfactory to many who felt that the administrative burdens it placed on carriers and participating States outweighed the benefits to those States and to the public. HR Rep No 102-171, pt I, p 49 (1991), HR Conf Rep No 102-404, pp 437-438 (1991), US Code Cong & Admin News 1991, pp 1526, 1679. In the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Congress therefore directed the ICC to implement a new system to replace the "bingo card" regime.* See Pub L 102-240, § 4005, 105 Stat 1914, 49 USC § 11506(c) (1994 ed). Under the new system, called the Single State Registration System, "a motor carrier [would be] required to register

annually with only one State," and "such single State registration [would] be deemed to satisfy the registration requirements of all other States." §§ 11506(c)(1)(A) and (C). Thus, one State would—on behalf of all other participating States—register a carrier's vehicles, file and maintain paperwork, and collect and distribute registration fees. § 11506(c)(2)(A). Participation in the Single State Registration System was limited to those States that had elected to participate in the "bingo card" system. § 11506(c)(2)(D).

ISTEA also capped the per-vehicle registration fee that participating States could charge interstate motor carriers. Congress directed the ICC to "establish a fee system . . . that (I) will be based on the number of commercial motor vehicles the carrier operates in a State and on the number of States in which the carrier operates, (II) will minimize the costs of complying with the registration system, and (III) will result in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991." § 11506(c)(2)(B)(iv). Congress provided that the charging or collection of any fee not in accordance with the ICC's fee system would "be deemed to be a burden on interstate commerce." § 11506(c)(2)(C).

---

* Congress abolished the ICC in 1995 and assigned responsibility for administering the new Single State Registration System to the Secretary of Transportation. See ICC Termination Act of 1995, Pub L 104-88, § 101, 109 Stat 803. The provisions of ISTEA governing the system were amended and recodified. See 49 USC § 14504(c). The Federal Highway Administration, under the Secretary of Transportation, adopted the ICC regulations that implemented the Single State Registration System, 61 Fed Reg 54706, 54707 (1996), and the Federal Motor Carrier Safety Administration now has authority to administer the system, 49 USC § 113(f)(1).

A

Plaintiffs argue that the federal statutory language is clear—a state may charge a maximum registration fee of $10 a vehicle to motor carriers engaged in interstate commerce, regardless of whether a motor carrier is registered in Michigan or another state. Plaintiffs acknowledge that MCL 478.7 reflects the mandate of § 11506 with regard to motor carriers registered out of state,[4] and asserts that motor carriers registered in Michigan are required to be charged similarly.

Defendants' counterargument is two-fold. First, § 11506 applies to registration fees only, not regulatory fees, and the interstate fee at issue is a regulatory fee. Second, the fee limit in § 11506 applies to participating states only, not the registration state. The court agreed with defendants' argument and granted summary disposition on this issue for the same reasons. Therefore, the key questions are (1) to whom does the fee limit in § 11506 apply, and (2) to what type of fees. The answers to these questions can be found in the language of the statute itself and the federal regulations that interpret it.

It is not an unreasonable burden on interstate commerce to require vehicles to register with a state; however, any registration requirements of a state that

---

[4] MCL 478.7 provides, in part:

(4) The annual fee levied on each interstate or foreign motor carrier vehicle operated in this state and licensed in another state or province of Canada shall be $10.00. The commission may enter into a reciprocal agreement with a state or province of Canada that does not charge vehicles licensed in this state economic regulatory fees or taxes and may waive the fee required under this subsection.

are in excess of the standards in subsection 11506(c) are considered an unreasonable burden. Subsection 11506(b). Under the SSRS, a motor carrier is required to register annually with only one state, and that registration satisfies the registration requirements of all the states. Subsection 11506(c)(1)(A). A motor carrier may only register with a participating state, a state which participated in the old "bingo card" system. Subsection 11506(c)(2)(D). The motor carrier must register with the state where its principal place of business is located, if it is a participating state, or else register with the participating state in which it operates the most vehicles. 49 CFR 367.3.[5] Therefore, a registration state, the state in which a motor carrier registers, is by definition a participating state. Michigan is a participating state, *Yellow Transportation*, *supra*, 123 S Ct 376; 154 L Ed 2d 385, and therefore, can be a registration state.

The registration state may require a motor carrier to (1) file proof of its federal registration (ICC permit), (2) file proof of insurance, (3) file the name of its agent for service of process, and (4) pay a fee. Subsection 11506(c)(2)(A). The registration state is then to issue the motor carrier a receipt, reflecting that proof of insurance was filed and that the fee was paid, a copy of which is to be kept in the carrier's vehicles. Subsection 11506(c)(2)(B). The fee is for the filing of the proof of insurance, and may not be charged for the filing of the motor carrier's ICC permit. Subsections 11506(c)(2)(B)(iv) and (v).

In support of the registration fee, the motor carrier must file with the registration state a form that delin-

---

[5] 49 CFR 1023.1 *et seq.* was recodified as 49 CFR 367.1 *et seq.*

eates (1) the number of vehicles it intends to operate in each participating state, (2) the fee each participating state charges each vehicle, (3) the total fee due each participating state, and (4) the total of all the fees due. 49 CFR 367.4(c)(4). The fee each participating state is allowed to charge each vehicle is equal to the amount the state charged or collected as of November 15, 1991, not to exceed $10. Subsection 11506(c)(2)(B)(iv)(III); 49 CFR 367.4(c)(4)(ii). Congress wanted to "minimize[] the costs of complying with the registration system" for the motor carriers, subsection 11506(c)(2)(B)(iv)(II), while at the same time preserving "revenues for the states which had participated in the bingo program," HR Conf Rep No 102-404 reprinted in 1991 USCCAN 1817. The fees a registration state collects on behalf of other participating states are remitted to those states monthly. 49 CFR 367.6. Thus, if a motor carrier registered in Michigan, it would first list the number of vehicles it operated in each participating state. Because Michigan is a participating state, it would need to list the number of vehicles it operated in Michigan. The fee Michigan could charge cannot exceed $10.

We find that the statutory language and its accompanying federal regulations are clear. A registration state is simply a participating state in which a motor carrier is registering. Therefore, when the statute states that a participating state may not charge a fee in excess of $10, this includes the registration state. To conclude otherwise, that a registration state could set its own fee, would contravene the express language and purpose of the statute.

The next question is whether the $100 fee in MCL 478.2(2) is a registration fee, so that it is subject to

the limitation in § 11506, or whether it is a regulatory fee. Plaintiffs assert that the fee is for all practical purposes a registration fee. Because the fee must be paid at the time a motor carrier registers with a state, and in return for the fee the motor carrier receives an identification decal, plaintiffs contend that one can only conclude that the fee is, in actuality, a registration fee. We disagree. Faced with a similar situation in *Franks & Son, Inc v Washington*, 136 Wash 2d 737, 759-760; 966 P2d 1232 (1998), the Washington Supreme Court rejected the plaintiffs' argument that because the regulatory fee and federal identification fee were collected at the same time, an unlawful registration requirement resulted. The court adeptly stated, "We believe a more realistic rationale for concurrent collection of the two fees was administrative convenience and efficiency." *Id.* at 760.

We find that the $100 interstate fee could reasonably be classified as a regulatory fee because it is a fee imposed for the administration of the MCA, particularly covering costs of enforcing safety regulations.[6] If the purpose of a fee is to regulate an industry or service, it can be properly classified as a regulatory fee. *Bolt v Lansing*, 459 Mich 152, 161-162; 587 NW2d 264 (1998). Because the fee in MCL 478.2(2) is not a registration fee, it is not subject to preemption by 49 USC 11506.

---

[6] Because vehicles licensed in Michigan that operate solely interstate are required to pay the $100 regulatory fee, the PSC waives the registration fee. *Schneider Nat'l Carriers, Inc v Michigan (On Remand)*, 247 Mich App 716, 721; 637 NW2d 838 (2001). Hence, the registration fee Michigan charges for vehicles licensed in Michigan is $0, less than the $10 limit imposed by § 11506. Therefore, the registration fee is within the federal mandate.

Plaintiffs argue that the federal law prohibits construing the fee as a regulatory fee, citing *Roadway Express, Inc v Treasurer of State of Illinois*, 120 Ill App 3d 133; 458 NE2d 66 (1983). That case involved a $31 registration fee Illinois charged Ohio motor carriers. *Id.* at 133-134. At the time, the federal regulation allowed a maximum registration fee of $5 plus an additional reasonable fee imposed to defray the cost of the regulation of carriers within the state's borders. *Id.* at 135. Plaintiffs contend that *Roadway Express* "issued a warning" that "no such additional 'regulatory fee' was permissible after 1981" because the federal regulation interpreting § 11506 was amended in 1981 and set an absolute limit of $10 for identification fees. However, *Roadway Express* issued no such warning. The court merely noted, "again parenthetically," that the federal regulation, 49 CFR 1023.33 (redesignated), was amended and set the limit at $10. *Roadway Express, supra* at 135.

Plaintiffs appear to argue that because the amended federal regulation did not explicitly provide for an additional fee, one was hence prohibited. However, plaintiffs provide no support for their argument. Further, plaintiffs fail to recognize the import of two other regulations in existence at the time. 49 CFR 1023.105 (1991) (superseded) provided that the rules and regulations were not to be construed to affect the collection of taxes or fees by a state from motor carriers for the operation of vehicles within the borders of a state. 49 CFR 1023.104 (1991) (superseded) provided that states were "urged" to use fees collected for the purpose of defraying the cost of regulation of motor carriers within their borders. Therefore, the ability of a state to collect fees in addition to the

registration fees was not affected by the removal from § 1023.33 of the language providing for additional fees.[7]

B

Plaintiffs also argue that the interstate fee was prohibited before the creation of the SSRS in 1994, under the previous version of § 11506. Plaintiffs assert this argument because their complaint was filed in the beginning of 1995, and with a three-year period of limitation, plaintiffs contend that they are entitled to a refund for the excess fees they have paid since 1992.

Before the 1994 enactment of the SSRS, § 11506 read, in pertinent part:

(b) The requirement of a State that a motor carrier . . . register the certificate or permit issued to the carrier under section 10922 or 10923 of this title is not an unreasonable burden on transportation referred to in section 10521(a)(1) and (2) of this title when the registration is completed under standards of the Commission under subsection (c) of this section. When a State registration requirement imposes obligations in excess of the standards, the part in excess is an unreasonable burden.

(c)(1) The Commission shall maintain standards and amendments to standards (A) prepared and certified to it

---

[7] We note that the substance of 49 CFR 1023.104 and 1023.105 was not included in the 1994 amendments, 49 CFR 1023.1-1023.6. However, neither was there any express prohibition on state-imposed regulatory fees. The statute and its regulations address registration requirements only. Because there is a presumption against federal preemption, we believe that Congress's silence cannot be interpreted as prohibiting state regulatory fees, see *Wisconsin Pub Intervenor v Mortier*, 501 US 597, 607; 111 S Ct 2476; 115 L Ed 2d 532 (1991), particularly given that regulatory and registration fees can coexist in the same field without conflicting, *Duprey, supra* at 665.

by the national organization of the State Commissions, and (B) prescribed by the Commission. . . .

The Commission prescribed the following interpretive regulation:

> The application for the issuance of such identification stamps or number shall . . . be duly completed and executed by an official of the motor carrier, and shall be accompanied by the fee, if any, prescribed by the law of such State; provided, however, that such fee shall not exceed $10 for the issuance of each such identification stamp; and provided further (when the State Commission assigns an identification number in lieu of issuing an identification stamp or stamps), that such fee shall not exceed $10 for each vehicle operated under the authority of the motor carrier identified in the cab card bearing such identification number. [49 CFR 1023.33 (superseded).]

The pre-1994 federal regulation substantively mirrored subsection 11506(c) as amended in 1994. Because we concluded that the interstate fee is a regulatory fee, it is outside the scope of the federal law and was not preempted.[8] Accordingly, the court did not err in granting defendants summary disposition.

IV

In their complaints, plaintiffs and intervening plaintiffs allege that the intrastate fees in MCL 478.1 and MCL 478.2(1) were preempted by § 601 of the FAAAA. Subsection 601(h), which became effective on January 1, 1995, prohibited state regulation of prices,

---

[8] We note that the cases from other jurisdictions that plaintiffs cite are inapplicable in this case. The conclusion in this case turns on whether the interstate fee is classified as a regulatory fee or a registration fee. In the cases plaintiffs cite, there was no disagreement that the fee at issue was a registration fee.

routes, or services of motor carriers, save for a few delineated exceptions. (Currently codified as 49 USC 14501[c].)

Plaintiffs argue that the court erred in granting defendants summary disposition on this issue before discovery was complete.[9] Plaintiffs assert that they should have been allowed an opportunity to conduct additional discovery in order to show that, as utilized, the intrastate fees are prohibited by federal law.

*In re Fed Preemption of Provisions of the Motor Carrier Act*, 223 Mich App 288, 302; 566 NW2d 299 (1997), held that § 601 did not preempt the entire MCA and did not indicate an intent to preempt fee provisions such as MCL 478.1 and MCL 478.2. The Court noted that in response to the enactment of the FAAAA, the PSC "issued considered decisions that indicated how its regulation of the trucking industry in Michigan was affected by federal legislation preempting at least some aspects of state regulation." *In re Motor Carrier Act, supra* at 300. In regard to the fee provisions at issue, the Court stated:

> The PSC still has significant regulatory obligations. For example, the PSC must supervise and regulate the safety of motor carrier operations. MCL 479.41; MSA 22.587(1). There is still a certification process. It follows that the fees for obtaining a certificate of authority, MCL 478.1; MSA 22.560, for protesting an application for a certificate, MCL 478.1a; MSA 22.560(1), and for administering the act, MCL 478.2(1); MSA 22.561(1), are unaffected by the preemptive effect of § 601. In fact, *because the* PSC is not using its resources to enforce preempted portions of the Motor Carrier Act, the fees collected by the PSC are not related to the preempted

---

[9] We note that plaintiffs do not contest the court's summary-disposition ruling that § 601 did not preempt the intrastate fees.

provisions and rules. Indeed, appellants Central Transport and Universal Am-Can have not shown that the cost of the PSC's operations has ever been totally funded by the fees it collects, and they have not provided any reason to believe that the fees collected were or can be used only for what is now preempted economic regulation. [*Id.* at 302-303; emphasis added.]

Plaintiffs contend that the PSC intrastate fees were being used to fund preempted portions of the MCA, and, thus, the fees were related to a preempted provision. Therefore, the fees were also preempted. Plaintiffs did not submit any documentary evidence below in support of this contention. Plaintiffs argue that they had intended to do so, but their opportunity was foreclosed when the court denied their motion for partial stay and bifurcation of issues. Plaintiffs requested a 90- to 120-day stay in the proceedings to conduct discovery in order to present a factual record to the court in a supplemental brief in response to the decision in *In re Motor Carrier Act, supra*; however, the court denied the motion without prejudice because it believed its summary-disposition ruling would cover the issue.

A court's decision regarding matters of discovery is reviewed on appeal for an abuse of discretion. *In re Pott*, 234 Mich App 369, 373; 593 NW2d 685 (1999). Plaintiffs could not address this Court's decision in *In re Motor Carrier Act, supra*, in their original motions for partial summary disposition because they were filed and argued in 1995, and the case was not decided until April 25, 1997. However, plaintiffs did not file their motion for partial stay and bifurcation of issues until March 1998, nearly one year later. The record indicates that plaintiffs were conducting dis-

covery during this entire time, yet never sought evidence relating to this issue.

We find that plaintiffs had ample opportunity to conduct discovery following the decision in *In re Motor Carrier Act, supra,* and file a supplemental brief containing their findings. Given that one year had passed, we also find that there is no reason to believe that had plaintiffs been given another three or four months in which to conduct discovery, plaintiffs would have uncovered a factual basis for their claim. Furthermore, we note that by stipulation, discovery was to be completed 180 days after the court issued its ruling on the parties' motions for summary disposition.

Plaintiffs assert in their reply brief that they are not arguing that they were prevented from conducting discovery, but that they were denied an opportunity to supplement their motion papers. However, the court did not foreclose plaintiffs' opportunity to present their argument. They could have filed additional briefs at any time before the court issued its ruling. In fact, on January 28, 1998, plaintiffs filed a supplemental brief in support of their motions for summary disposition and in opposition to defendants' motion, in which they specifically mentioned *In re Motor Carrier Act, supra.* This indicates plaintiffs were well aware of the import of the case, and could have conducted discovery and presented their argument accordingly. Plaintiffs mention that defendants did not submit the opinion as authority until January 1998. However, *In re Motor Carrier Act* was decided in April 1997, and nothing prevented plaintiffs from proactively distinguishing their case from it.

Moreover, the court specifically invited plaintiffs to present their argument again if they thought its ruling did not adequately cover the issue. Plaintiffs did file a motion for reconsideration after the court issued its orders on the parties' motions for summary disposition, yet did not reraise this issue. We recognize that plaintiffs renewed their motion to stay on October 8, 1998; however, this was before the court issued its ruling. Because the court had not yet issued its ruling, plaintiffs could have attempted to conduct discovery after its first motion was denied.

Therefore, we conclude that the court did not abuse its discretion in denying plaintiffs' request to stay the proceedings in order to conduct additional discovery. A decision of a court that obtained the correct result, albeit for a different reason, will be affirmed on appeal. *Lavey v Mills*, 248 Mich App 244, 250; 639 NW2d 261 (2001).

v

Plaintiffs Troy Cab, Inc., et al. allege that the intrastate fees in MCL 478.1 and MCL 478.2(1) are unconstitutional taxes in violation of various sections of the Michigan Constitution. The fees at issue are credited to the PSC. MCL 478.6. Whether a charge is a permissible fee or an illegal tax is a question of law. *Bolt*, *supra* at 158. A court's factual findings are reviewed for clear error. A finding is clearly erroneous when, although there is evidence to support it, upon reviewing the entire record, the appellate court is left with a definite and firm conviction that a mistake was made. *Christiansen v Gerrish Twp*, 239 Mich App 380, 387; 608 NW2d 83 (2000).

In determining whether a charge imposed by a unit of government is a fee or a tax, a court must consider: (1) whether the charge serves a regulatory purpose rather than operates as a means of raising revenue, (2) whether the charge is proportionate to the necessary costs of the service to which it is related, and (3) whether the payor has the ability to refuse or limit its use of the service to which the charge is related. *Bolt, supra* at 161-162. These factors should be considered in their totality, and a weakness in one area does not mandate a particular finding. *Id.* at 167; *Graham v Kochville Twp*, 236 Mich App 141, 151; 599 NW2d 793 (1999).

Taxes have a primary purpose of raising revenue, while fees are usually in exchange for a service rendered or a benefit conferred. *Bolt, supra* at 162. The stated purpose of the intrastate fees is for "the administration of [the MCA]." MCL 478.1; MCL 478.2(1). The express purposes of the act are

> to confer upon the [PSC] the power and authority and to make it its duty to supervise and regulate the transportation of property by motor vehicle for hire upon and over the public highways of this state in all matters whether specifically mentioned herein or not, so as to: (a) Relieve all future undue burdens and congestion on the highways arising by reason of the use of the highways by motor vehicles operated by motor carriers; (b) protect and conserve the highways and protect the safety and welfare of the traveling and shipping public in their use of the highways; (c) promote competitive and efficient transportation services; (d) meet the needs of motor carriers, shippers, receivers, and consumers; (e) allow a variety of quality, price, and service options to meet changing market demands and the diverse requirements of the shipping public; (f) allow the most productive use of equipment and energy resources; (g) provide the opportunity for efficient and well-managed motor carri-

ers to earn adequate profits and attract capital; (h) promote intermodal transportation; (i) prevent unjust discrimination; (j) promote greater participation by minorities in the motor carrier system; (k) provide and maintain service to small communities and small shippers; (l) prevent evasion of this act through any device or arrangement; (m) promote entrepreneurship in the motor carrier industry by allowing greater contract carrier economic and entry flexibility; and (n) promote the use of jointly considered and initiated rates, classifications, divisions, allowances, charges, or rules of motor carriers under commission approved agreements. [MCL 475.2.[10]]

This language indicates the exactions are regulatory.

Taxes are designed to raise revenue for the general public, while a fee "confers benefits only upon the particular people who pay the fee, not the general public or even a portion of the public who do not pay the fee." *Graham, supra* at 151. In this case, in exchange for the fees, a motor carrier receives the right to operate its trucks in Michigan, and the fees are used to enforce the provisions of the act that carry out the above-listed purposes. Thus, there is a direct benefit to the one who pays the fees. We recognize that promoting and regulating safe use of the highways benefits the general public as well. However, a regulatory fee can have dual purposes and still maintain its regulatory characterization. As long as the primary purpose of a fee is regulatory in nature, the fee can also raise money provided that it is in support of the underlying regulatory purpose, *id.* at 151, and thus benefit the general public.

---

[10] Any purposes that related to economic regulation were preempted by § 601 of the FAAAA as of January 1, 1995, and the PSC ceased to enforce those regulations. *In re Motor Carrier Act, supra* at 300. However, the Legislature has yet to amend the MCA to reflect the federal preemption.

Plaintiffs' argument focuses on the second prong of the test, whether the fees are proportional to the cost of the services to which they relate. Plaintiffs assert that in 1982, when the fees were increased,[11] they became taxes because the amounts collected were in excess of the expenses related to the services. A fee must be proportionate to the cost of the regulation, but its amount is presumed reasonable unless its unreasonableness is established. *Id.* at 151. "[W]here revenue generated by a regulatory 'fee' exceeds the cost of regulation, the 'fee' is actually a tax in disguise." *Gorney v Madison Hts*, 211 Mich App 265, 268; 535 NW2d 263 (1995).

In support of their contention, plaintiffs presented two affidavits and a senate fiscal report. We find the affidavits of minimal value in determining whether the fees are unreasonable. Neither of the affiants worked for the PSC and they could only offer their opinion regarding how the fees were spent. The senate fiscal report, created by a senate fiscal analyst, showed how the funds received by the PSC were utilized for fiscal years 1982-83 to 1994-95,[12] and one of

---

[11] 1982 PA 399 raised the fees in MCL 478.1 and MCL 478.2(1) to their current levels.

[12] Plaintiffs also assert that the report shows that the fees supported activities not related to the regulation of motor carriers because a portion was allocated to the State Police, Department of Commerce, and Department of Civil Service. However, it is the duty of the police to assist the PSC in enforcement of the MCA, MCL 479.13, and the Department of Commerce provides administrative support to the PSC that enables it to carry out its duties. It follows that the PSC would allocate a portion of the fees to them. In addition, the allocation of a very small portion of the PSC's revenues to the Department of Civil Service is mandated by the Legislature in accordance with the Constitution to fund the civil service. Const 1963, art 11, § 5. The allocations to this department averaged only $23,000 each year when revenues ranged from $3.2 to $6.3 million.

the charts showed that there was a surplus nearly every year.[13]

However, defendants dispute the accuracy of the figures in the report. Defendants note that the charts reflect the total fees collected, not just the fees collected pursuant to MCL 478.1 and MCL 478.2(1), and defendants got confirmation from the author of the report that appropriations to the Michigan Truck Safety Fund were not considered. Therefore, defendants contend that the excess amounts were distorted.

It is clear that the report on which plaintiffs rely included all fee revenues without excluding nonchallenged interstate fees collected pursuant to the SSRS and its predecessor system. Therefore, the surplus figures were distorted to some degree. Even without reducing the surplus figures, the aggregate excess during the thirteen years was only 11.7 percent, a relatively small percentage. The test is whether the fee is proportional, not whether it is equal, to the amount required to support the services it regulates. *Graham, supra* at 151. We conclude that the Court of Claims did not clearly err in finding that the fees were not "wholly disproportionate."

Lastly, plaintiffs argue that the exaction is not voluntary because a motor carrier cannot operate its trucks in Michigan without paying it. Defendants argue that a motor carrier has a choice with regard to what extent its trucks will have a presence in Michigan, and, therefore, the exaction is voluntary. While

---

[13] Plaintiffs present no evidence regarding the proportionality of the fees after 1995, when the PSC ceased any economic regulatory functions as mandated by § 601 of the FAAAA. Therefore, we have no basis on which to determine the proportionality of the fees after 1995.

this is true in regard to the application fee, MCL 478.1, defendants' logic is erroneous in regard to the administration fee, MCL 478.2(1), because every vehicle licensed in Michigan must pay this fee irrespective of where it operates. Even if we were to view the exaction as more compulsory than voluntary, when the totality of factors are considered, we believe the exactions are most properly classified as regulatory fees. *Bolt, supra* at 167; *Graham, supra* at 151. Therefore, the court did not err in granting defendants summary disposition on this issue.

VI

Plaintiffs next argue that the intrastate and interstate fees violate the Equal Protection Clause of the United States and Michigan constitutions because they apply to "for-hire" motor carriers only and not to private motor carriers.[14] Both the federal and state constitutions guarantee equal protection, and afford similar protection. Const 1963, art 1, § 2; US Const, Am XIV, § 1; *Vargo v Sauer*, 457 Mich 49, 60; 576 NW2d 656 (1998). A court's ruling whether a statute violates equal protection is a question of law. *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999).

Legislative classifications that do not implicate a fundamental right or target a suspect class are presumed to be constitutional if they have a rational basis, and one who challenges such a statute has the burden of showing that it bears no rational relation to some independent and legitimate legislative end. *TIG*

---

[14] Because we concluded that the fees are regulatory, plaintiffs additional argument, that the fees violate Michigan's Uniform Taxation Clause, is without merit.

*Ins Co, Inc v Dep't of Treasury,* 464 Mich 548, 557; 629 NW2d 402 (2001); *Vargo, supra* at 60. Under the rational-basis test, a statute will ordinarily be sustained if it can be said to advance a legitimate governmental interest, even if the law seems to be unwise or works to the disadvantage of a particular group, or if the rationale seems to be tenuous. *People v Cooper (After Remand),* 220 Mich App 368, 372-373; 559 NW2d 90 (1996). A legislative classification may not be set aside if any set of facts may reasonably be conceived to justify it. *Id.* at 373.

Before 1994, the fees were used to fund the economic- and safety-regulation of motor carriers. Motor carriers do not include private carriers. MCL 475.1(i). A private carrier is "any person engaged in the transportation of property by motor vehicle upon public highways where the transportation is incidental to, or in furtherance of, any commercial enterprise of the person, other than transportation." MCL 475.1(q). A "for hire" motor carrier is one that receives "remuneration or reward of any kind, paid or promised, either directly or indirectly." MCL 475.1(e). Thus, "for hire" motor carriers are engaged in the business of transportation.

The rationale behind the classification distinction may be supported by facts either known or reasonably assumed, even if those facts may be debatable. *TIG Ins, supra* at 557, citing *Crego v Coleman,* 463 Mich 248, 259-260; 615 NW2d 218 (2000). We believe it is reasonable to assume that motor carriers have larger fleets than private carriers, operate under competitive pressures, and operate more frequently than private carriers. We can surmise that these carriers are in need of being more closely scrutinized in order

to protect the general public, which also uses the public highways; thus, the need for regulations and fees to cover their enforcement.

Even after economic regulation of the motor carriers ceased, as *In re Motor Carrier Act, supra* at 302, recognized, the PSC "still has significant regulatory obligations," including supervising and regulating the safety of motor-carrier operations, as well as the certification process. Therefore, the need for fees to support such regulations were not eliminated after the FAAAA was enacted. The same concerns that existed before still exist. Accordingly, we conclude that the Legislature's classification bore a rational relation to a legitimate state purpose, and the court did not err in granting defendants summary disposition.

VII

Finally, intervening plaintiffs argue that the intrastate fee imposed by MCL 478.2(1) violates the Commerce Clause because it burdens interstate commerce. Again, we disagree, but for a different reason than stated by the Court of Claims.

The Commerce Clause provides that Congress "shall have power . . . [t]o regulate commerce . . . among the several states . . . ." US Const, art I, § 8, cl 3. The "dormant Commerce Clause" "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc v Dep't of Environmental Quality of the State of Oregon,* 511 US 93, 98; 114 S Ct 1345; 128 L Ed 2d 13 (1994).

The Court of Claims held that the Commerce Clause was not implicated because the fee applied to

intrastate carriers only. However, any tax or regulation that affects interstate travel, even if imposed solely on intrastate commerce, is subject to Commerce Clause analysis. *Citizens for Logical Alternatives & Responsible Environment v Clare Co Bd of Comm'rs*, 211 Mich App 494, 499; 536 NW2d 286 (1995). Because the fee is imposed on any vehicle that operates intrastate pursuant to a certificate of authority, even if it also travels interstate, the fee affects interstate commerce, and thus, implicates the dormant Commerce Clause. Although the Court of Claims did not address this issue, our review is nevertheless proper because whether a statute violates the Commerce Clause is a question of law. *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 311; 497 NW2d 595 (1993).

"A statute is presumed constitutional absent a clear showing to the contrary." *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 413; 488 NW2d 182 (1992). The test for determining whether a regulatory fee violates the Commerce Clause involves a two-tiered approach.[15] The first step is to determine whether the statute discriminates against interstate interests or merely regulates evenhandedly with only incidental effects upon interstate commerce. *Oregon Waste, supra* at 99. " '[D]iscrimination' simply means differential treatment of in-state and out-of-state economic

---

[15] Intervening plaintiffs contend that the four-pronged test enunciated in *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977), and utilized in *American Trucking Ass'ns, Inc v Scheiner*, 483 US 266, 283; 107 S Ct 2829; 97 L Ed 2d 226 (1987), is applicable. However, this test is used to analyze the constitutionality of state-taxation statutes that tax interstate commerce itself, i.e., taxes for the privilege of doing business in the state, *Complete Auto, supra* at 279, not regulatory statutes.

interests that benefits the former and burdens the latter." *Id.* The United States Supreme Court has recognized that there is no clear line separating the two categories. The critical consideration is the overall effect of the statute on both local and interstate activity. *Brown-Forman Distillers Corp v New York State Liquor Auth*, 476 US 573, 579; 106 S Ct 2080; 90 L Ed 2d 552 (1986). A state law will be invalidated if it "discriminate[s] against an article of commerce by reason of its origin or destination out of State." *C & A Carbone, Inc v Town of Clarkstown, New York*, 511 US 383, 390; 114 S Ct 1677; 128 L Ed 2d 399 (1994).

In making this determination, we must consider all the provisions of the challenged statute. MCL 478.2(1) requires that motor carriers that are licensed in Michigan and travel solely intrastate or travel both intrastate and interstate, a "mixed" carrier, must pay a fee of $100 for each vehicle. MCL 478.2(2) requires that motor carriers that are licensed in Michigan and travel solely interstate must also pay the $100 fee. Therefore, the regulatory fee is the same for all motor carriers licensed in Michigan, regardless of their final destination. It does not directly regulate interstate commerce, *Pike v Bruce Church, Inc*, 397 US 137, 142; 90 S Ct 844; 25 L Ed 2d 174 (1970), nor is economic protectionism at issue, *Arkansas Electric Coop Corp v Arkansas Pub Service Comm*, 461 US 375, 394; 103 S Ct 1905; 76 L Ed 2d 1 (1983).

Defendants assert that the majority of vehicles that pay the fee operate solely intrastate, which presumably leads to their conclusion that the effect on interstate commerce is minimal. However, the number of interstate vehicles burdened is inconsequential to a finding of discrimination. *New Energy Co of Indiana*

*v Limbach*, 486 US 269, 276-277; 108 S Ct 1803; 100 L Ed 2d 302 (1988).

Intervening plaintiffs argue that the mixed carrier invariably will pay a higher per-mile fee than the carrier who operates solely intrastate. They assert that because the fee is a flat annual fee, in order to receive the greatest benefit for the fee, a carrier would need to maximize its intrastate operations and this could potentially affect a carrier's economic decisions by discouraging an intrastate carrier from engaging in interstate commerce.

While this may be so, it is a matter of pure speculation. Intervening plaintiffs present no evidence that any trucking firm's route choices are affected by the imposition of the fee, only surmising that this could occur in a hypothetical case. Only one affidavit was submitted by intervening plaintiffs, in which James Crozier, manager of licensing and fuel for intervening plaintiff TNT Holland Motor Express, Inc., stated that mixed carriers often top off their interstate loads with intrastate hauls or transport intrastate loads in between interstate hauls. However, he never averred that this was done only because of the fee imposed by MCL 478.2(1). Regardless of the $100 fee, topping off loads or adding intrastate hauls in between interstate ones is an economically efficient decision for the motor carriers. We do not find that the fee raises a significant barrier to participation in interstate trade. Any effect the fee has on interstate commerce is incidental and does not rise to the level of discrimination.

Having concluded that the statute regulates evenhandedly, it will be upheld unless the burden it imposes on interstate commerce is "clearly excessive

in relation to the putative local benefits." *Pike, supra* at 142. Intervening plaintiffs do not contest that the statute serves a legitimate nondiscriminatory purpose, i.e., funding safety and related regulations. This is an exercise of the state's police power and serves a critical function in protecting the people who use Michigan's highways. Great deference is given to state legislation in the field of highway safety regulation and a strong presumption in favor of its validity exists. *Raymond Motor Transportation, Inc v Rice,* 434 US 429, 443; 98 S Ct 787; 54 L Ed 2d 664 (1978). On the basis of the record before us, we cannot say that the burden imposed on interstate commerce by the $100 annual fee is clearly excessive in relation to Michigan's substantial interest in regulating safety on its highways. Therefore, we hold that MCL 478.2(1) does not violate the Commerce Clause. Accordingly, we affirm the Court of Claims' summary-disposition ruling in favor of defendants even though it reached its decision for the wrong reason. *Lavey, supra* at 250.

Affirmed.